**UNITED STATES of America**

v.

**P. Darrell ACORD, Virginia G. Acord, Peggy A. Graydon a/k/a Peggy A. Owens, and Ricky D. Acord.**

No. CR. 98–076–N.

United States District Court,
M.D. Alabama,
Northern Division.

April 7, 1999.

John M. Bolton, III, David B. Byrne, Jr., Robison & Belser, P.A., Montgomery, AL, for P. Darrell Acord, Virginia G. Acord.

David Cromwell Johnson, Johnson, Liddon, Bear & Tuggle, Birmingham, AL, for Peggy Acord Graydon.

*ORDER*

MYRON H. THOMPSON, District Judge.

The United States has asked for an *ex parte* restraining order in this criminal money laundering case prohibiting the defendants from in any way disposing of a 1995 Lexus LS 400, which was allegedly purchased with proceeds from an illegal

conspiracy. The issues for the court are two: first, whether such an order can be properly issued under federal statutory law without notice to the defendants and a hearing; and, second, if so, whether, without violating the fifth amendment to the United States Constitution, the order could, and should, issue in this case.

## I.

The answer to the first question is clear: the criminal forfeiture statute at 21 U.S.C.A. § 853(e)(1)(A) authorizes this court to issue an *ex parte* restraining order on the basis of an indictment for money laundering under 18 U.S.C.A. § 1956.

On March 24, 1999, a federal grand jury in the Middle District of Alabama returned an indictment against defendants P. Darrell Acord, Virginia G. Acord, Peggy A. Graydon (also known as Peggy A. Owens) and Ricky D. Acord. Among other offenses, the indictment charges the defendants with conspiracy to commit money laundering in violation of 18 U.S.C.A. § 1956(h).[1] It further calls for the forfeiture, pursuant to 18 U.S.C.A. § 982(a)(1), of any and all property directly involved in or traceable to the conspiracy to commit money laundering, including, among other items, a 1995 Lexus LS 400 automobile.[2]

On March 30, 1999, the United States applied for an *ex parte* restraining order against the defendants which would prohibit them and their affiliates from in any way disposing of the 1995 Lexus LS 400, which was allegedly purchased with proceeds from the conspiracy.

Defendants convicted of conspiracy to commit money laundering must forfeit to the United States "any property, real or personal, involved in such offense, or any property traceable to such property." 18 U.S.C.A. § 982(a)(1). Property subject to forfeiture as a result, and any administrative or judicial proceedings related to it, are governed by 21 U.S.C.A. § 853. *See* 18 U.S.C.A. § 982(b)(1)(A).[3]

Section 853(e)(1) authorizes protective *ex parte* orders as follows:

"Upon application of the United States, the court may enter a restraining order or injunction, require the execution of a satisfactory performance bond, or take any other action to preserve the availability of property described in subsection (a) of this section for forfeiture under this section—

(A) upon the filing of an indictment or information charging a violation of this subchapter or subchapter II of this chapter for which criminal forfeiture may be ordered under this section and alleging that the property with respect to which the order is sought would, in the event of conviction, be subject to forfeiture under this section; or

(B) prior to the filing of such an indictment or information, if, after notice to persons appearing to have an interest in the property and opportunity for a hearing, the court determines that—

(i) there is a substantial probability that the United States will prevail on the issue of forfeiture and that failure to enter the order will result in the proper-

---

1. "Any person who conspires to commit any offense defined in this section or section 1957 shall be subject to the same penalties as those prescribed for the offense the commission of which was the object of the conspiracy." 18 U.S.C.A. § 1956(h).

2. "The court, in imposing sentence on a person convicted of an offense in violation of section 5313(a), 5316, or 5324 of title 31, or of section 1956, 1957, or 1960 of this title, shall order that the person forfeit to the United States any property, real or personal, involved in such offense, or any property trace-

able to such property." 18 U.S.C.A. § 982(a)(1).

3. "Property subject to forfeiture under this section, any seizure and disposition thereof, and any administrative or judicial proceeding in relation thereto, shall be governed—(A) in the case of a forfeiture under subsection (a)(1), (a)(6), or (a)(8) of this section, by subsections (c) and (e) through (p) of section 413 of the Comprehensive Drug Abuse Prevention and Control Act of 1970 (21 U.S.C.853) . . . ." 18 U.S.C.A. § 982(b)(1).

ty being destroyed, removed from the jurisdiction of the court, or otherwise made unavailable for forfeiture; and

(ii) the need to preserve the availability of the property through the entry of the requested order outweighs the hardship on any party against whom the order is to be entered:

Provided, however, That an order entered pursuant to subparagraph (B) shall be effective for not more than ninety days, unless extended by the court for good cause shown or unless an indictment or information described in subparagraph (A) has been filed."

This provision permits the court to issue a post-indictment restraining order without prior notice to the defendants and without any pre-restraint hearing. *See United States v. Bissell,* 866 F.2d 1343, 1349 (11th Cir.) ("[O]nce an indictment has issued, the court may order such restraints *ex parte."*), *cert. denied sub nom. Caraballo-Sandoval v. United States,* 493 U.S. 876, 110 S.Ct. 213, 107 L.Ed.2d 166 (1989).

The court may therefore issue a post-indictment *ex parte* restraining order pursuant to 21 U.S.C.A. § 853(e)(1)(A).

## II.

■ The court is also impressed that an *ex parte* restraining order should issue in this case and that such order would not violate the fifth amendment's due process clause, which guarantees that "[n]o person shall ... be deprived of life, liberty, or property, without due process of law."

The superseding indictment, which alleges that the 1995 Lexus LS 400 will be subject to forfeiture if the defendants are convicted on the money laundering charges, satisfies the requirements of 21 U.S.C.A. § 853(e)(1)(A) and entitles the government to the requested restraint. *See United States v. Monsanto,* 491 U.S. 600, 612–14, 109 S.Ct. 2657, 2664–65, 105

L.Ed.2d 512 (1989) (limiting discretion of the court to deny restraining order that otherwise complies with forfeiture statute).

Admittedly, Supreme Court "precedents establish the general rule that individuals must receive notice and an opportunity to be heard before the Government deprives them of property." *United States v. James Daniel Good Real Property,* 510 U.S. 43, 48, 114 S.Ct. 492, 498, 126 L.Ed.2d 490 (1993). However, the requested restraining order will comply with the requirements of due process because it is both necessary and justified in this particular instance. It is justified by the important public interest in enforcing criminal sanctions generally, *see Calero–Toledo v. Pearson Yacht Leasing Co.,* 416 U.S. 663, 679, 94 S.Ct. 2080, 2089–90, 40 L.Ed.2d 452 (1974), and by the government's interest in property subject to criminal forfeiture, *see Bissell,* 866 F.2d at 1349.[4] In *United States v. Bissell,* in specifically upholding against a due-process challenge a post-indictment *ex parte* restraining order issued under § 853(e)(1)(A), the Eleventh Circuit Court of Appeals explained:

"The Fifth Amendment generally prohibits the deprivation of property without a prior hearing, [*Fuentes v. Shevin,* 407 U.S. 67, 90, 92 S.Ct. 1983, 1999, 32 L.Ed.2d 556 (1972) ], but one exception to the need for a prior hearing exists when the government seizes items subject to forfeiture. *Calero–Toledo v. Pearson Yacht Leasing Co.,* 416 U.S. 663, 679–80, 94 S.Ct. 2080, 2089–90, 40 L.Ed.2d 452 (1974). Thus, appellants had no right to a hearing before the government restrained their assets."

866 F.2d at 1352. Other courts have reached the same result. *See, e.g., United States v. Monsanto,* 924 F.2d 1186, 1192–93 (2d Cir.) (en banc) (upholding post-indictment *ex parte* restraining order is-

---

4. "All right, title, and interest in property described in subsection (a) of this section vests in the United States upon commission of the act giving rise to forfeiture under this section...." 21 U.S.C.A. § 853(c). Although the government's ownership interest in forfei-

table assets is not perfected until conviction, the government has an interest in such assets before trial insofar as it asserts a legitimate claim pursuant to the procedures set forth in § 853. *See Bissell,* 866 F.2d at 1349.

sued under § 853(e)(1)(A)), *cert. denied,* 502 U.S. 943, 112 S.Ct. 382, 116 L.Ed.2d 333 (1991).

The *ex parte* order is also reasonably necessary in this specific case because a Lexus automobile can easily be sold, transferred, moved, hidden or destroyed. *See Calero–Toledo,* 416 U.S. at 679, 94 S.Ct. at 2090 (authorizing *ex parte* seizure of a yacht) Pre-restraint notice and a hearing would give the defendants an opportunity to dispose of the vehicle and thereby to frustrate the public interest in preserving forfeitable assets for a possible conviction. *Id.* The requested order, which seeks only to restrain the defendants from selling or otherwise disposing of the Lexus and which does not prohibit the defendants' continued use of the automobile, is drawn narrowly to meet this need.

Finally, it is important to note what the court is not confronted with here: a *seizure* of the 1995 Lexus LS 400 without a hearing or notice. With an *ex parte* seizure, where the defendants would be deprived of possession of the automobile without a hearing or notice, the due-process calculus could arguably be different. *Cf. James Daniel Good Real Property,* 510 U.S. at 55, 48, 114 S.Ct. at 501 ("The practice of *ex parte* seizure ... creates an unacceptable risk of error. Although Congress designed the drug forfeiture statute to be a powerful instrument in enforcement of the drug laws, it did not intend to deprive innocent owners of their property."). This would especially be true if the government failed to present evidence of any exigent circumstances and if there were no meaningful opportunity for a post-seizure hearing. *See id.* at 53, 114 S.Ct. 492, 114 S.Ct. at 501 ("We tolerate some exceptions to the general rule requiring predeprivation notice and hearing, but only in extraordinary situations where some valid governmental interest is at stake that justifies postponing the hearing until after the event.") (citations and internal quotation marks omitted).

In other words, because a *seizure* is a more "restrictive measure" than a *re-straining order, id.* at 62, 114 S.Ct. at 505, the interests implicated by the former in these circumstances could differ significantly from those implicated by the latter. Indeed, exigent circumstances for an *ex parte seizure* can be established by "show[ing] that less restrictive measures— *i.e.,* a ... restraining order ...—would not suffice to protect the Government's interests in preventing the sale, destruction, or continued unlawful use of the ... property." *Id.*

Accordingly, it is ORDERED that the United States of America's application for an *ex parte* restraining order, filed March 30, 1999, is granted.