**UNITED STATES of America, Plaintiff,**

v.

**Angel GONZALEZ–MENDEZ, aka "Pito," Moraima Maldonado–Martinez, aka "Moraima," Francisco Lopez–Acevedo, aka "Frankie," Defendants.**

**No. CR.04–217(PG).**

United States District Court, D. Puerto Rico.

Jan. 14, 2005.

---

Juan R. Acevedo–Cruz, Juan R. Acevedo Cruz Law Office, San Juan, PR, for Angel Gonzalez–Mendez, also known as Pito, Defendant.

Jayson N. Ramos–Perez, Juan A. Pedrosa–Trapaga, Juan A. Pedrosa Law Office, San Juan, PR, for Moraima Maldonado–Martinez, also known as Moraima, Defendant.

Joannie Plaza–Martinez, Federal Public Defender's Office, Hato Rey, PR, for Edwin Roman Malpica–Garcia, also known as Jose Luis Santiago–Garcia, also known as Winchi, also known as Atsu, also known as Alenjandro Malpica–Garcia, also known as Edwin Roman Malpica–Garcia, also known as Sombra, Defendant.

Benjamin Ortiz–Belaval, Ortiz & Rodriguez Law Office, San Juan, PR, for William Valentin–Manon, also known as Rafael Valentin–Manon, also known as Rafael Valentin–Manor, also known as William Valentin–Manor, Defendant.

Ramon L. Garay–Medina, Garay Medina Law Office, San Juan, PR, for Alexis Garcia–Heredia, also known as Alex, also known as Alexis, Defendant.

Francisco Acevedo–Padilla, Acevedo Law Office, San Juan, PR, for Francisco Lopez–Acevedo, also known as Frankie, Defendant.

Lynn M. Doble–Salicrup, United States Attorney's Office, San Juan, for USA, Plaintiff.

## OPINION AND ORDER

JUAN M. PEREZ-GIMENEZ, District Judge.

Before the Court is the government's motion for an expedited hearing regarding the source of defendants' attorney fees. (Docket No. 65) Upon careful review of the motion (*id.*), defendant Gonzalez–Mendez' response thereto (Docket No. 92), the law, and the record of the case, for the reasons set forth hereunder, the motion is **DENIED**.

### I.  BACKGROUND

In May of 2004, several men prominently bearing firearms entered the BBVA Bank, Cataño Branch, Puerto Rico, emerging with approximately a quarter million dollars. Following the heist, a grand jury charged Angel Gonzalez–Mendez, Moraima Maldonado–Martinez, Francisco Lopez–Acevedo (hereafter "defendants"), among several others, with various federal offenses associated with a conspiracy to commit this armed robbery in violation of 18 U.S.C. § 371.

Despite being unemployed and having little apparent legal income, defendants have nevertheless retained counsel. The government now moves the Court to hold an expedited hearing to determine whether proceeds from the heist were used to pay the retainers. The case is pending trial, and to date, none of the money has been recovered.

## II. DISCUSSION

■ Comprehended by the Sixth Amendment right to counsel is the right to select and be represented by one's counsel of choice. *See Wheat v. U.S.*, 486 U.S. 153, 159–60, 108 S.Ct. 1692, 100 L.Ed.2d 140 (1988). Whatever the full extent of the Sixth Amendment's protection of one's right to retain counsel of choice, however, that protection does not go beyond the individual's own financial resources. *Caplin & Drysdale, Chartered v. U.S.*, 491 U.S. 617, 626, 109 S.Ct. 2646, 105 L.Ed.2d 528 (1989) (*quoting Walters v. National Assn. of Radiation Survivors*, 473 U.S. 305, 370, 105 S.Ct. 3180, 87 L.Ed.2d 220 (1985) (Stevens, J., dissenting)).

■ Accordingly, "a robbery suspect ... has no Sixth Amendment right to use funds he has stolen from a bank to retain an attorney to defend him," and the government does not violate the Sixth Amendment if it seizes the robbery proceeds and refuses to permit the suspect to use them to pay for his defense. *Caplin*, 491 U.S. at 626, 109 S.Ct. 2646; *cf. U.S. v. Monsanto*, 491 U.S. 600, 616, 109 S.Ct. 2657, 105 L.Ed.2d 512 (1989) (district court's entry of pretrial order freezing defendant's assets, including those set aside to pay attor-

ney fees, offends neither Fifth nor Sixth Amendment).

Here, however, the government has been unable to recover the stolen money. As defendants appear to be so impecunious that they would lack the wherewithal to retain counsel absent the quarter-million dollar windfall allegedly looted from the bank, the government requests an expedited hearing to inquire into the source of the fees. The government argues that these circumstances justify the inquiry and that it would not violate defendants' attorney-client privilege. (Docket No. 65 at 4–5, et seq.)

■ It may well be that certain fee arrangements fall outside the direct purview of the attorney-client privilege. *See In re January 1976 Grand Jury*, 534 F.2d 719, 727 (7th Cir.1976) (determining matters regarding fees are generally not privileged); *but cf. U.S. v. Sindel*, 53 F.3d 874 (8th Cir.1995) (attorney's release of information regarding payments would reveal substance of communication). Nonetheless, it is not clear that the relevant information in this case could be had without implicating the privilege. And regardless of whether the privilege applies, the information is still confidential. *See ABA Comm. on Ethics and Professional Responsibility, Formal Op. No. 90–358, Sept. 13, 1990* (even where the attorney-client privilege does not apply counsel has an ethical duty not to reveal confidential information).

Furthermore, no precedent authorizing this sort of routine scrutiny prior to the conclusion of trial has been brought to the attention of this Court, and neither has this Court found any.[1] "It is hardly neces-

---

1. To the extent the government is requesting a procedure akin to the *Nebbia* hearing, the Court declines. *U.S. v. Nebbia*, 357 F.2d 303 (2d Cir.1966); *U.S. v. $250,000 in U.S. Currency*, 808 F.2d 895, 899 n. 7 (1st Cir.1987) (defining *Nebbia* hearing as "an inquiry into

those who provided the defendant's bail and their motives for the purpose of assessing the likelihood of flight"). *Nebbia* hearings do not implicate the same policies at stake here. Moreover, whereas in a *Nebbia* hearing counsel may represent defendant, in a hearing

sary to say that the right to counsel being conceded, a defendant should be afforded a fair opportunity to secure counsel of his own choice." *Powell v. Alabama,* 287 U.S. 45, 53, 53 S.Ct. 55, 77 L.Ed. 158 (1932).

To that end, Courts do not generally become involved in matters anent the choice of counsel or the source of attorney fees, save in exceptional circumstances such as those triggered by grand jury investigations into non-privileged matters, *see Whitehouse v. U.S. District Court for the District of Rhode Island,* 53 F.3d 1349 (1st Cir.1995), a conflict or potential conflict of interest, *see Wheat,* 486 U.S. at 159–60, 108 S.Ct. 1692, a showing of future or ongoing crime or fraud relating to the fee agreement, *see U.S. v. Reeder,* 170 F.3d 93 (1st Cir.1999), or pursuant to forfeiture proceedings. *See Caplin,* 491 U.S. at 626, 109 S.Ct. 2646. It is significant that the government has presented no argument that any of the circumstances traditionally warranting court-intervention are present in this case.

This Court is keenly aware that even if the information were not encompassed by the attorney-client privilege, the inquiry the government requests would strike at the heart of the attorney-client relationship.[2] Counsel would be forced to step outside his role as counsel for defendant in order to testify about or even against defendant, thereby creating a conflict of interest, irreparably damaging the relationship. Most disturbing of all, the inquiry proposed by the government has the potential of collapsing into a full-blown bench trial, in utter derogation of a defendant's right to a trial by jury. The Court therefore declines to hold any such hearing at this time.[3]

### III.  CONCLUSION

A robbery suspect ... has no Sixth Amendment right to use funds he has stolen from a bank to retain an attorney to defend him if he is apprehended. The money, though in his possession, is not rightfully his; the Government does not violate the Sixth Amendment if it seizes the robbery proceeds and refuses to permit the defendant to use them to pay for his defense. "[N]o lawyer, in any case, ... has the right to ... accept stolen property, or ... ransom money, in payment of a fee.... The privilege to practice law is not a license to steal." *Caplin & Drysdale,* 491 U.S. at 626, 109 S.Ct. 2646 (*quoting Laska,* 82 F.2d, at 677). While prohibiting the defendant from using seized loot to pay for his defense would not endanger his Sixth Amendment right to counsel, the Court's pre-trial indication into the matter based on nothing but raw acerbities has great potential to do so. The odd circumstances cited by the government notwithstanding, defendants enjoy a presumption of innocence and the Court will not contribute to its obfuscation by holding a hearing based on the contrary premise. The government's motion is therefore, **DENIED.**

**IT IS SO ORDERED.**

---

regarding the source of attorney fees, counsel would be forced to testify against defendant— and this remains so whether counsel responds to the underlying questions with "yes," "no," "I don't know" or "I plead the Fifth."

**2.**  As the parties have not directly briefed the issue, the Court will not discuss the Fifth Amendment implications.

**3.**  Should the jury return a verdict of guilty, however, the attorney may be compelled to forfeit any fees shown to be derived from the proceeds of the robbery, *see Caplin,* 491 U.S. at 626, 109 S.Ct. 2646, not to mention his or her licence. *See e.g. In re Ryder,* 263 F.Supp. 360 (E.D.Va.1967), *aff'd,* 381 F.2d 713 (4th Cir.1967).