In the

# United States Court of Appeals
## For the Seventh Circuit

No. 15-3472

FEDERAL TRADE COMMISSION,

*Plaintiff-Appellee,*

*v.*

KEVIN TRUDEAU,

*Defendant.*

Appeal of:

HOGAN MARREN BABBO & ROSE, LTD., and FARUKI
IRELAND & COX, P.L.L.

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 03 C 3904 — **Robert W. Gettleman**, *Judge.*

ARGUED SEPTEMBER 14, 2016 — DECIDED DECEMBER 29, 2016

Before POSNER, EASTERBROOK, and SYKES, *Circuit Judges.*

EASTERBROOK, *Circuit Judge.* This decision marks the end
of litigation about Kevin Trudeau's frauds—or so we hope.
Earlier decisions affirmed his criminal conviction and sen-
tence and his adjudication in civil contempt after he refused

to surrender the profits made from violating orders of the Federal Trade Commission. See *United States v. Trudeau*, 812 F.3d 578 (7th Cir. 2016); *FTC v. Trudeau*, 662 F.3d 947 (7th Cir. 2011). The contempt judgment is approximately $38 million, and Trudeau claims to be destitute. Believing that this is just another of his lies, the FTC demanded that firms it thought to be affiliated with Trudeau turn over business records.

Website Solutions, one of these entities, hired Hogan Marren Babbo & Rose, Ltd., and Faruki Ireland & Cox, P.L.L. (collectively the Law Firms) to represent it in responding to the FTC's demand. After considering some of the documents ultimately revealed, the district judge concluded that Website Solutions is under Trudeau's control and that all of its assets are available to satisfy his obligations. The judge appointed a receiver to marshal the assets of Website Solutions and Trudeau's other entities. The receiver collected a net of approximately $8 million, which the FTC wants to distribute to Trudeau's defrauded customers. In October 2015 the district court approved the receiver's plan; this order also rejected the Law Firms' request for compensation from funds in the receiver's custody. In November the judge authorized the receiver to send $4 million to the FTC; in December the judge approved the receiver's compensation; in February 2016 the judge accepted the receiver's final report and authorized the receiver to send all remaining funds to the FTC. That order closed the receivership estate.

The Law Firms have appealed—but from the October 2015 order rather than any of the later orders. This led us to question whether the order is appealable, because as of October 2015 all $8 million remained in the receiver's control. The Law Firms could have waited until the estate-closing

order without jeopardizing their claim to reimbursement. At oral argument we directed the parties to file supplemental memoranda addressing appellate jurisdiction. After receiving these submissions, we conclude that the October 2015 order functioned as approval of the receiver's proposed plan of distribution. If this were a bankruptcy proceeding rather than a receivership, the October 2015 order would have been labeled a plan of reorganization (or perhaps a plan of liquidation). And in bankruptcy the confirmation of such a plan is appealable as a "final decision" even though funds remain in the estate. See *Bullard v. Blue Hills Bank*, 135 S. Ct. 1686 (2015) (recognizing that an order confirming a plan of reorganization is appealable, while holding that an order declining to approve such a plan is not). So we conclude that the October 2015 order is "final" under 28 U.S.C. §1291 and move to the merits.

No one has appealed from the district court's conclusion that Trudeau controls Website Solutions and that all of its assets are available to reimburse the persons he defrauded. Nor has anyone appealed from the district court's approval of the plan of distribution. The Law Firms, the sole appellants, contend only that their fees should be paid ahead of compensation for Trudeau's victims.

The Law Firms depict their role as helping the receiver understand Website Solutions' business and recover its assets; the FTC, by contrast, contends that the Law Firms did little but obstruct discovery in an effort to keep the FTC from laying hands on assets that Trudeau was trying to hide. We need not decide which characterization is correct, because either way the Law Firms face an insuperable hurdle: well before they were hired by Website Solutions to deal with the

FTC's discovery demands, the federal judiciary had directed Trudeau to turn over all proceeds of his improper commercial activities. That order created a lien on Website Solutions' assets (once the judge found that they were under Trudeau's control) that was senior to any claim created later. As a proxy for Trudeau, Website Solutions had no right to make commitments to pay third parties with funds belonging to Trudeau's victims. Cf. *Caplin & Drysdale, Chartered v. United States*, 491 U.S. 617 (1989); *United States v. Monsanto*, 491 U.S. 600 (1989). And lawyers, particularly, had to understand that their claims to compensation would be junior to those asserted by the FTC on the victims' behalf.

In bankruptcy, law firms that represent the estate (or the trustee) can be compensated ahead of other creditors, but only if they receive the court's approval for their hiring and demonstrate that their activities are necessary and benefit the estate. See 11 U.S.C. §§ 327, 330, 1103; *Baker Botts L.L.P. v. ASARCO LLC*, 135 S. Ct. 2158 (2015). Neither the Law Firms nor Website Solutions obtained the court's approval for their engagement and proposed course of conduct, nor did they demonstrate to the district judge's satisfaction afterward that what they had done was necessary or helped the estate. (The judge implied agreement with the FTC's submission that the Law Firms did more to obstruct the discovery than to promote it.) Indeed, the Law Firms have not even tried to show that they would have satisfied the requirements for compensation had this been a bankruptcy rather than a receivership. We don't see why the use of the receivership device should make the Law Firms better off.

There was another potential route to compensation: Website Solutions might have asked the district court to or-

der the FTC to ensure that Website Solutions would be reasonably compensated for its expenses in responding to the subpoenas. See Fed. R. Civ. P. 45(d)(3)(C)(ii). But Website Solutions did not make such a request.

The Law Firms stress that Rule 45 is not the only way that lawyers may be paid for their work in civil litigation, and that is correct. But Website Solutions was holding other people's money and so could not make financial commitments to third parties. That's why the Law Firms needed the district court's approval. They concede that the judge had discretion to say yes or no. And given the fact that anyone hired by Website Solutions presumptively stands in line behind Trudeau's victims, the district court did not abuse that discretion by saying "no."

AFFIRMED