*1107 ROBINSON, J., dissenting.
¶ 23. I conclude that the plurality's guidance in Luis v. United States , --- U.S. ----, 136 S.Ct. 1083, 194 L.Ed.2d 256 (2016) (plurality opinion), and the sound reasoning on which that decision is based, militate against court-ordered attachment of untainted assets necessary to defendant's exercise of her Sixth Amendment right to counsel. For that reason, I dissent.
¶ 24. The Luis decision does not mandate a particular outcome in this case. Nevertheless, the reasoning in the plurality opinion is instructive and persuasive with respect to the issue in this case. Plaintiff in this case stands in much the same shoes as the government did in Luis , and the considerations underlying the plurality's resolution of the conflict between the government's statutory rights in that case and the defendant's Sixth Amendment interests apply in this case as well. The consequences of this analysis are burdensome for plaintiff in this case, and for any civil litigant seeking to attach a criminal defendant's untainted assets, but that burden is not dissimilar to other legal impediments to pretrial attachments, and flow from the weight afforded defendant's fundamental constitutional right.
¶ 25. Luis does not establish binding precedent with respect to this case for two reasons. First, Luis was resolved with a plurality opinion on behalf of four Justices and a concurring opinion on behalf of one. Ordinarily, we determine the binding precedential effect of such a decision by following the narrowest holding among the plurality opinions. State v. Atlantic Richfield Co. , 2016 VT 22, ¶ 20, 201 Vt. 342, 142 A.3d 215. In this case, the rationales on which the opinions were based are distinct but overlapping; the only clear commonality is the actual holding that the government could not rely on 18 U.S.C. § 1345 to freeze a defendant's untainted assets preconviction to secure potential penalties and restitution upon conviction. That is not the precise issue in this case. Second, the fact that the government, rather than a private civil litigant, sought to freeze the defendant's assets in the context of a criminal prosecution distinguishes Luis from this case enough that even if the plurality opinion had enjoyed the support of a full majority, it would not unequivocally compel a decision in defendant's favor in this context.
¶ 26. Nevertheless, the plurality's language and reasoning in Luis provide persuasive support for defendant's argument that the attachment below violates her Sixth Amendment rights. The plurality did not frame the central question in the case as turning on the government's unique status or on the historical pedigree of the statute pursuant to which the government sought to freeze defendant's assets; rather, it stated, "[t]he question presented is '[w]hether the pretrial restraint of a criminal defendant's legitimate, untainted assets (those not traceable to a criminal offense) needed to retain counsel of choice violates the Fifth and Sixth Amendments.' " Luis , --- U.S. at ----, 136 S.Ct. at 1088 (plurality opinion). The issue in that case, as defined by the plurality, is on all fours with the issue in this case.
¶ 27. More important than the plurality's word choice in defining the issue before it is the plurality's rationale in deciding that case. Almost every step in the Luis plurality's analysis applies with equal force to the circumstances of this case.
*1108 ¶ 28. Writing for the Luis plurality, Justice Breyer started by explaining that the Sixth Amendment right to counsel includes a defendant's "right to be represented by an otherwise qualified attorney whom that defendant can afford to hire." Id. at ----, 136 S.Ct. at 1089. Justice Thomas, in his separate opinion leading to the same conclusion as the plurality, went further, emphasizing that the original understanding of the Sixth Amendment right to counsel in 1791 was that it protected only a defendant's right to retain an attorney the defendant could afford. Id. at ----, 136 S.Ct. at 1098-99 (Thomas, J., concurring). Defendant in this case likewise relies on her Sixth Amendment right to hire an attorney of her choice whom she can afford to hire. Nothing about this case calls for a different analysis of the scope or significance of the Sixth Amendment right.
¶ 29. Next, the plurality described the critical distinction between a pretrial freeze of tainted assets, which are subject to pretrial statutory forfeiture even if the forfeiture undermines a criminal defendant's right to hire counsel of the defendant's choosing, and untainted assets, which required further analysis. Id. at ----, 136 S.Ct. at 1090 (plurality opinion). The plurality explained that as a matter of property law, a defendant's ownership interest in tainted assets is imperfect. It noted, "[t]he robber's loot belongs to the victim, not to the defendant." Id. at ----, 136 S.Ct. at 1090. The statute the Court had applied in prior decisions in which it authorized pretrial restraint of a defendant's tainted assets provided that title to assets traceable to the crime passed to the government at the time the crime was committed. Id. at ----, 136 S.Ct. at 1090-91 (citing Caplin & Drysdale, Chartered v. United States , 491 U.S. 617, 109 S.Ct. 2646, 105 L.Ed.2d 528 (1989), and United States v. Monsanto , 491 U.S. 600, 109 S.Ct. 2657, 105 L.Ed.2d 512 (1989) ). Because the tainted property at issue therefore belonged to the government by law, no constitutional principle gave the defendant a right to keep the property to pay counsel. Id. at ----, 136 S.Ct. at 1090. But where untainted assets are involved, the plurality said that the government is essentially in the position of an unsecured creditor with respect to these assets: it "someday might collect from a debtor's general assets," but is without "any present claim to, or interest in, the debtor's property." Id. at ----, 136 S.Ct. at 1092. For these reasons, the plurality concluded that the Court's precedent involving seizure of tainted assets did not authorize pretrial seizure of untainted assets necessary to hire counsel of the defendant's choice. Id. at ----, 136 S.Ct. at 1091-92.
¶ 30. The assets at issue here are undisputedly "untainted." They are not the fruits of defendant's alleged crimes; nor was she alleged to have used them in the commission of the crime. As with the untainted assets at issue in Luis , there is no principle of common law or statute that provides that, by operation of law, title to the untainted assets belongs to someone else. Plaintiff is not simply analogous to an unsecured creditor (or potential unsecured creditor) seeking to impose restrictions on untainted property to secure a possible future judgment; she is a potential unsecured creditor seeking just that. The second step in the Luis plurality's analysis applies with the same force here: the assets in question here are untainted, so the U.S. Supreme Court's prior decisions authorizing restraints on tainted assets provide no support for plaintiff's claims here.
¶ 31. The plurality accordingly focused its analysis on the conflict between the government's statutory authority to restrain innocent "property of equivalent value" to that of tainted property and the defendant's Sixth Amendment rights by *1109 comparing the government to a civil claimant in similar circumstances. Id. at ----, 136 S.Ct. at 1093. It listed contexts in which the law of property allows a person "without a present interest in a piece of property" to impose restrictions upon a current owner to protect some future legal interest. Id. at ----, 136 S.Ct. at 1093 (listing person holding reversionary interest in property seeking to prevent waste, contingent beneficiary of trust seeking to prevent trustee from dissipating trust assets, and holder of contingent, future executory interest in property seeking to enjoin activities of current owner.). The plurality described the government as seeking an analogous order that would "preserve Luis' untainted assets so that they will be available to cover the costs of forfeiture and restitution if she is convicted, and if the court later determines that her tainted assets are insufficient or otherwise unavailable." Id. at ----, 136 S.Ct. at 1093. This is exactly the interest plaintiff in this case seeks to protect through her attachment. Nothing about the plurality's general description of the government's interests focused on factors unique to its status as the government. The plurality's comparison of the government's general interests to that of private civil claimants of various sorts undermines the suggestion that the government's interest in Luis was of a different character or quality than the interests of a private civil claimant like plaintiff in this case.
¶ 32. The plurality offered three considerations in support of its conclusion that the Sixth Amendment prohibits the court order that the government sought pursuant to its statutory authority. First, the plurality balanced the interests at stake and concluded that the defendant's Sixth Amendment right outweighed the government's interest in freezing assets to cover potential future penalties or restitution orders. Id. at ----, 136 S.Ct. at 1093. It emphasized that the Sixth Amendment right to assistance of counsel is "a fundamental constituent of due process law," and that the order sought by the government "would seriously undermine that constitutional right." Id. at ----, 136 S.Ct. at 1093. On the other side of the balance, the plurality recognized that the government had a contingent interest in securing its punishment of choice (namely, criminal forfeiture), and the victims had an interest in securing restitution from funds belonging to the defendant. Id. at ----, 136 S.Ct. at 1093. The plurality described these interests as important, but concluded that compared to the right to counsel of choice, they lay "somewhat further from the heart of a fair, effective criminal justice system." Id. at ----, 136 S.Ct. at 1093.
¶ 33. The balance in this case is similar. If anything, plaintiff's interests are weaker than the government's in Luis . In that case, the government had dual interests: it sought to secure future penalties and secure restitution for the victims from the defendant's funds. In this case, plaintiff's interest is nearly identical to the latter of the government's dual interests. Plaintiff seeks to secure a potential future judgment to compensate the estate for injuries it suffered at defendant's hands. Like the government's interest in securing a potential future restitution order for the victim, plaintiff's interest in securing a potential future judgment is substantial, but it is still outweighed by the constitutionally grounded right to counsel of choice.
¶ 34. The majority's approach here would give a credit card company seeking to collect a past due obligation the ability to freeze funds in a lawyer's trust account to secure a potential judgment, while frustrating a criminal defendant's Sixth Amendment right to counsel. How would a lawyer ever know whether a criminal defendant client's retainer would remain *1110 available to pay for the lawyer's representation? By eschewing a balancing test altogether, the majority avoids grappling with the severe consequences of its position with respect to a fundamental constitutional commitment.
¶ 35. The plurality's second consideration was the absence of any legal tradition supporting the preconviction seizure of innocent property with no connection to the charged crime. Id. at ----, 136 S.Ct. at 1093-94. Justice Thomas's concurrence relied more heavily on this rationale. Id. at ----, 136 S.Ct. at 1099-1103 (Thomas, J., concurring). This factor focuses specifically on the historical limitations of the government's forfeiture remedy, and is not readily transferrable to the case before us. It is the one factor that supports distinguishing the present case from Luis , and is the consideration that drives the majority's opinion.
¶ 36. The plurality's final consideration was that allowing a restraint of the untainted property the defendant needed to pay for counsel "could well erode the right to counsel to a considerably greater extent than we have so far indicated." Id. at ----, 136 S.Ct. at 1094 (plurality opinion). The plurality asked, "[h]ow are defendants whose innocent assets are frozen ... supposed to pay for a lawyer-particularly if they lack 'tainted assets' because they are innocent, a class of defendants whom the right to counsel certainly seeks to protect?" Id. at ----, 136 S.Ct. at 1095. Moreover, it noted that a rule that drives more criminal defendants into the public defender system imposes greater burdens on government-paid lawyers. The force of this consideration does not depend in any measure on whether the party seeking to freeze untainted assets is the government or a civil litigant. A rule that made funds needed by a criminal defendant to pay for counsel subject to attachment in a civil court would pose no less of a threat, and have no different consequences with respect to this concern than the rule rejected by a majority of the U.S. Supreme Court in Luis .
¶ 37. In sum, the lion's share of the plurality's analysis in Luis is persuasive, and fully applicable in this case. Although one of the plurality's considerations does not apply in this case, the plurality opinion does not rest on that consideration, and the rest of its analysis reinforces that the government in that case was in the same position as a private litigant seeking security for a possible future judgment.
¶ 38. It's true that this ruling may limit the ability of crime victims, or any other potential civil creditor with claims against a criminal defendant, to secure potential civil judgments in their favor from the untainted assets of the defendant. Parties seeking to attach untainted assets in civil court face numerous obstacles to their ability to secure potential future judgments. They cannot attach a debtor's homestead up to a limit of $125,000 in value, 27 V.S.A. § 101 ; a debtor's interest in a motor vehicle up to $2500, 12 V.S.A. § 2740(1) ; or a debtor's professional or trade books or tools up to $5000 in value, 12 V.S.A. § 2740(2). Insurance payments of various sorts, 8 V.S.A. §§ 3706 - 3709, unemployment compensation benefits, 21 V.S.A. § 1367, and veteran's benefits, 38 U.S.C. § 5301, are all exempt from trustee process or attachment.[7] Like the statutory *1111 exemptions, defendant's Sixth Amendment rights operate in effect as an additional exemption; defendant's funds, whether held in her own bank account or deposited in her lawyer's trust account, are exempt from attachment to the extent they are necessary to pay for legal fees by the lawyer of her choice. Civil litigants seeking security for potential future judgments may be burdened by this exemption, like all the others. But the weight of defendant's constitutional claim is no less strong than these statutory exemptions.
¶ 39. For these reasons, I would reverse the trial court. I would treat funds reasonably necessary for defendant's criminal defense by a lawyer of her choice whom she can afford to pay as exempt from the court's attachment, and would authorize attachment of those funds only to the extent that they are not reasonably necessary to her criminal defense.
¶ 40. I am authorized to state that Justice Eaton joins this dissent.

In addition to the statutory exemptions, many decisions hold that the rules of discovery preclude a plaintiff from inquiring into a defendant's financial circumstances unless the plaintiff has alleged a viable claim for punitive damages. This is because "[e]vidence of wealth is irrelevant and prejudicial in most instances." Campen v. Stone , 635 P.2d 1121, 1128 (Wyo. 1981) ; see also Mid Continent Cabinetry, Inc. v. George Koch Sons, Inc. , 130 F.R.D. 149, 151 (D. Kan. 1990) ; Christy v. Ashkin , 972 F.Supp. 253, 253 (D. Vt. 1997) ; Manns v. Briell , 349 Ill.App.3d 358, 285 Ill.Dec. 108, 811 N.E.2d 349, 355 (2004) ; Sawyer v. Boufford , 113 N.H. 627, 312 A.2d 693, 694 (1973).