#23878-a-RWS

**2006 SD 84**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

* * * *

STATE OF SOUTH DAKOTA,                          Plaintiff and Appellant,

  v.

$1,010.00 IN AMERICAN
CURRENCY,                                       Defendant and Appellee.

* * * *

APPEAL FROM THE CIRCUIT COURT OF
THE SEVENTH JUDICIAL CIRCUIT
PENNINGTON COUNTY, SOUTH DAKOTA

* * * *

HONORABLE A.P. FULLER
Judge

* * * *

LAWRENCE E. LONG
Attorney General

JEFFERY J. TRONVOLD
Assistant Attorney General
Pierre, South Dakota                            Attorneys for plaintiff
                                                and appellant.


AMY YANNI
Office of the Public Defender
  for Pennington County
Rapid City, South Dakota                        Attorney for defendant
                                                and appellee.

* * * *

CONSIDERED ON BRIEFS
ON MAY 23, 2006

OPINION FILED **09/06/06**

#23878

SABERS, Justice

[¶1.] The State appeals an order by the circuit court appointing the Pennington County Public Defender's Office to represent Duane Apple (Apple) in this civil forfeiture proceeding. We affirm.

**FACTS**

[¶2.] Although the facts have not been fully developed, Apple is incarcerated in the State Penitentiary in Sioux Falls for violating conditions of his parole.[1] On September 14, 2005, the State brought this civil forfeiture action alleging Apple had used $1,010 in a drug-related transaction.[2]

[¶3.] Apple responded with a handwritten motion to release the funds and a motion for a thirty-day continuance. In his motion for continuance, Apple wrote: "My name is Duane Apple an [sic] I'm requesting a 30 Day [sic] continuance in this Matter [sic] cause [sic] I am seeking legal assistance in my case." Apple later wrote a letter to the Pennington County Clerk of Courts, requesting an attorney. In his letter, Apple stated:

> I am not smart enough to answer some of this [sic] questions in these papers you all [sic] sent me, [sic] these interrogatories that were sent me [sic]. May I please have a lawyer help me in this Matter [sic] cause [sic] I do not understand alot [sic] and I'm in prison right now an [sic] don't have the freedom to go out an [sic] have a lawyer help me in this Matter [sic].

---

1. It appears Apple violated the conditions of his parole by moving to Rapid City without consent.

2. SDCL 34-20B-69(76) permits forfeiture of, and provides that no property right exists in, "funds or other things of value used for the purposes of unlawfully purchasing, attempting to purchase, distributing, or attempting to distribute any controlled drug or substance or marijuana. . . ."

Apple completed an application for court-appointed counsel. The circuit court appointed the Pennington County Public Defender's Office to represent Apple.

[¶4.] On November 3, 2005, the State filed a motion to remove appointed counsel. A hearing was held on November 8. The State argued Apple was not statutorily or constitutionally entitled to appointed counsel. The State also alleged that Apple was a drug dealer and either used or obtained the $1,010 in a drug transaction.

[¶5.] Apple's counsel represented to the circuit court that she contacted a rancher from Okaton, South Dakota, who employed Apple over the summer. Apparently, the rancher paid Apple between $1,100 and $1,200 dollars sometime in August, 2005. Counsel argued that although Apple had not been charged by the State for the alleged drug transaction, the circuit court had an equitable power to appoint counsel in the civil forfeiture action.

[¶6.] The circuit court denied the State's motion. The circuit court did not enter findings of fact or conclusions of law. Instead, the court stated on the record:

> [T]his man [is] incarcerated in the State Penitentiary and has no money and there's a thousand dollars which counsel represents to me as an officer of the [c]ourt that he believes is through his employer and wants to establish that that money was earned from the sweat of his brow. So I'm supposed to let him come out here and run up against the Attorney General's Office and their skills and ability without an attorney to present his case?
>
> . . .
>
> Well, I'm going to remain as I have and it's my order that the Public Defender's Office of Rapid City, South Dakota, will represent Mr. Apple in this matter.

[¶7.]    On November 18, 2005, we temporarily stayed the circuit court proceedings and considered the State's motion for a discretionary appeal. On December 1, 2005, the State convened a grand jury which indicted Apple on charges of possession and distribution of methamphetamine. We granted the State's petition for appeal on December 9, 2005. We address the following issues:

1.    Whether SDCL 23A-40-6 or SDCL 23A-40-7 permits a circuit court to appoint counsel to represent an indigent defendant in a civil forfeiture action.

2.    Whether an indigent defendant has a Sixth Amendment right to appointed counsel in a civil forfeiture action.

3.    Whether an indigent defendant has a Fourteenth Amendment due process right to appointed counsel in a civil forfeiture action.

## Standard of Review

[¶8.]    This case involves statutory interpretation. "Statutory interpretation and application are questions of law, and are reviewed by this Court under the de novo standard of review." Chapman v. Chapman, 2006 SD 36, ¶10, 713 NW2d 572, 576 (citing State v. Anderson, 2005 SD 22, ¶19, 693 NW2d 675, 681 (quoting Block v. Drake, 2004 SD 72, ¶8, 681 NW2d 460, 463) (internal quotations omitted)).

> Statutes are to be construed to give effect to each statute and so as to have them exist in harmony. It is a fundamental rule of statutory construction that the intention of the law is to be primarily ascertained from the language expressed in the statute.

In re Estate of Meland, 2006 SD 22, ¶6, 712 NW2d 1, 2 (quoting In re Estate of Jetter, 1997 SD 125, ¶11, 570 NW2d 26, 29 (quoting Rushmore State Bank v. Kurylas, 424 NW2d 649, 653 (SD 1988)) (internal citations omitted).

[¶9.]     Generally, we review questions concerning constitutional rights under the de novo standard of review. *See* State v. Asmussen, 2006 SD 37, ¶11, 713 NW2d 580, 586; State v. Williams, 2006 SD 11, ¶12 n2, 710 NW2d 427, 432 n2. However, with regard to a due process claim, the United States Supreme Court has implied that circuit courts should be given a degree of deference. Lassiter v. Department of Social Services of Durham County, 452 US 18, 31-32, 101 SCt 2153, 2162, 68 LEd2d 640 (1981) (noting that the facts and circumstances that give rise to due process claims are subject to "infinite variation" and should be "answered in the first instance by the trial court, subject, of course, to appellate review").

### 1. Statutory right to counsel

[¶10.]     No specific statute allows for appointed counsel in civil forfeiture actions. Instead, Apple relies upon SDCL chapter 23A-40, which provides counsel for indigent defendants:

> *In any criminal investigation or in any criminal action or action for revocation of suspended sentence or probation in the circuit or magistrate court or in a final proceeding to revoke a parole*, if it is satisfactorily shown that the defendant or detained person does not have sufficient money, credit, or property to employ counsel and pay for the necessary expenses of his representation, the judge of the circuit court or the magistrate shall, upon the request of the defendant, assign, at any time following arrest or commencement of detention without formal charges, counsel for his representation, who shall appear for and defend the accused upon the charge against him, or take other proper legal action to protect the rights of the person detained without formal charge.

(SDCL 23A-40-6) (Emphasis added).

[¶11.]     By its plain terms SDCL 23A-40-6 provides for appointment of counsel in "any criminal investigation or in any criminal action for revocation of suspended

sentence or probation in the circuit or magistrate court or in a final proceeding to revoke a parole. . . ." Because this is a civil forfeiture action, Apple is not entitled to appointed counsel under SDCL 23A-40-6.

[¶12.]     Apple seems to agree that a plain reading of SDCL 23A-40-6 does not entitle him to appointed counsel. However, he urges us to interpret SDCL 23A-40-6 in conjunction with SDCL 23A-40-7, which provides in part:

> The board of county commissioners of each county and the governing body of any municipality shall provide for the representation of indigent persons described in § 23A-40-6. They shall provide this representation by any or all of the following:
> (1)   Establishing and maintaining an office of a public defender;
> (2)   Arranging with the courts in the county to appoint attorneys *on an equitable basis* through a systematic, coordinated plan; or
> (3)   Contracting with any attorney licensed to practice law in this state.

(Emphasis added). According to Apple, SDCL 23A-40-7(2) permits a circuit court to appoint counsel to represent indigent people whenever "equity requires." The State responds by arguing civil forfeiture actions are legal, not equitable, and the Pennington County Commissioners have not arranged a "systematic, coordinated plan" with the circuit courts. Both arguments misconstrue the intention of the legislature in drafting SDCL 23A-40-7.

[¶13.]     By using the word "shall," the legislature mandated that the board of county commissioners and the governing body of any municipality provide for the representation of indigent persons described in SDCL 23A-40-6. As mentioned, SDCL 23A-40-6 does not provide for appointed counsel in civil forfeiture actions.

Thus, neither the Pennington County Board of Commissioners nor the governing body of Rapid City is statutorily required to provide representation for Apple in this matter. Once it is determined that Apple is not an indigent person described in SDCL 23A-40-6, the remaining portions of SDCL 23A-40-7 become irrelevant. However, because Apple and the State focus a substantial part of their argument on SDCL 23A-40-7, we examine the legislative intent behind the "equitable basis" language contained in subsection two.

[¶14.] If it is determined an individual is an indigent defendant in one of the actions encompassed by SDCL 23A-40-6, the legislature provides three methods by which the board of county commissioners and governing body of the municipality can provide representation. Under SDCL 23A-40-7, the board or the municipality can use one or all of these methods in providing representation. Subsection two permits an arrangement with the circuit courts by which attorneys are appointed on an equitable basis through a systematic, coordinated plan.

[¶15.] Contrary to Apple's argument, SDCL 23A-40-7 does not create an additional, equitable ground for appointing counsel. Instead, it merely provides methods for providing representation. If the board or municipality adopts subsection two, then appointments must be made on an equitable basis, rather than an inequitable basis, and through a systematic, coordinated plan. SDCL 23A-40-7.

[¶16.] In summary, SDCL 23A-40-6 provides the *circumstances in which* an indigent defendant is entitled to appointed counsel. SDCL 23A-40-7 merely provides *the methods* by which the board or municipality provide representation.

Because civil forfeiture actions are not included in SDCL 23A-40-6, Apple has no statutory right to appointed counsel.

### 2. Sixth Amendment right to counsel

[¶17.]        The Sixth Amendment to the United States Constitution provides in part, "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defen[s]e." US Const amend. VI. The right to counsel provided in the Sixth Amendment is expressly limited to "criminal prosecutions." The United States Supreme Court has refused to interpret this right beyond the text of the Amendment. *See* Austin v. United States, 509 US 602, 608, 113 SCt 2801, 2804, 125 LEd2d 488 (1993) (stating "[t]he protections provided by the Sixth Amendment are explicitly confined to criminal prosecutions"). Consequently, Apple has no Sixth Amendment right to counsel in this matter.

### 3. Due process right to counsel

[¶18.]        The United States Supreme Court has not addressed whether the Due Process Clause of the Fourteenth Amendment requires appointed counsel in civil forfeiture proceedings. The Court has, however, had occasion to determine whether other constitutional provisions apply in such actions. *See Austin*, 509 US at 608 n4, 113 SCt at 2805 n4, 125 LEd2d 488.

[¶19.]        Over one hundred years ago, the Court addressed whether the Fifth Amendment's Self-Incrimination Clause applied in civil forfeiture proceedings. *See* Boyd v. United States, 116 US 616, 6 SCt 524, 29 LEd 746 (1886). Although the Self-Incrimination Clause is textually limited to "criminal case[s]," the *Boyd* Court held that it applied in civil forfeiture actions where the statute made the culpability

of the defendant relevant, or where the defendant faced the possibility of subsequent criminal proceedings. *Id.* at 634, 6 SCt at 534, 29 LEd 746; United States v. Ward, 448 US 242, 253-54, 100 SCt 2636, 2644, 65 LEd2d 742 (1980) (discussing *Boyd*); *Austin*, 509 US at 608 n4, 113 SCt at 2805 n4, 125 LEd2d 488 (discussing *Ward* and *Boyd*). The *Boyd* Court noted:

> We are also clearly of opinion that proceedings instituted for the purpose of declaring the forfeiture of a man's property by reason of offenses committed by him, though they may be civil in form, are in their nature criminal.

*Boyd*, 116 US at 633-634, 6 SCt at 534, 29 LEd 746. The Court continued:

> If the government prosecutor elects to waive an indictment, and to file a civil information against the claimants,-that is, civil in form,-can he by this device take from the proceeding its criminal aspect and deprive the claimants of their immunities as citizens, and extort from them a production of their private papers, or, as an alternative, a confession of guilt? This cannot be. The information, though technically a civil proceeding, is in substance and effect a criminal one.

*Id.* at 634, 6 SCt at 534, 29 LEd 742.

[¶20.] Almost a century after *Boyd*, the United States Supreme Court examined whether the Fourth Amendment's prohibition against unreasonable searches and seizures applied in civil forfeiture proceedings. One 1958 Plymouth Sedan v. Commonwealth of Pennsylvania, 380 US 693, 85 SCt 1246, 14 LEd2d 170 (1965). In *One 1958 Plymouth Sedan*, the Pennsylvania Supreme Court held that the Fourth Amendment did not apply in forfeiture proceedings because they were civil, not criminal in nature. 380 US at 695-96, 85 SCt at 1248, 14 LEd2d 170. The United States Supreme Court reversed, relying on its holding in *Boyd*. *Id.*

[¶21.]     In *Ward*, the United States Supreme Court held that the Fifth Amendment's Self-Incrimination Clause did not apply when the government sought to collect a civil penalty from the defendant, because the penalty was "much more analogous to traditional civil damages." 448 US at 254, 100 SCt at 2644, 65 LEd2d 742. The Court distinguished *Boyd* on the grounds that it dealt with civil forfeiture proceedings that "posed a danger that the appellants would prejudice themselves in respect to later criminal proceedings." *Id*.

[¶22.]     Through these precedents, the United States Supreme Court has made clear that there are occasions in which the Fourth and Fifth Amendments apply to civil forfeiture proceedings. As mentioned, the Court has not had occasion to determine whether the Due Process Clause requires appointed counsel to represent a civil forfeiture defendant to secure the rights afforded by the Fourth and Fifth Amendments. However, the Court has examined the due process right to counsel in various proceedings.

[¶23.]     In *Lassiter v. Department of Social Services*, the Court determined whether the Due Process Clause required appointment of counsel to represent an indigent mother in a termination of parental rights proceeding. 452 US at 24, 101 SCt at 2158, 68 LEd2d 640. The Court noted that historically due process only required the assistance of counsel in cases that threatened the defendant's physical liberty. *Id*. at 26-27, 101 SCt at 2159, 68 LEd2d 640. However, unlike the Sixth Amendment right to counsel, the Court did not limit the due process right to counsel to criminal cases. *Id*. Instead, the Court held that there is a "*presumption that an indigent litigant has a right to counsel only when, if he [or she] loses, he [or*

she] may be deprived of their physical liberty." *Id.* (Emphasis added). However, this presumption must be balanced against the three elements announced in *Mathews v. Eldridge*: (1) the private interests at stake, (2) the government's interest, and (3) the risk the procedures will lead to an erroneous decision. *Id.* (citing Mathews v. Eldridge, 424 US 319, 335, 96 SCt 893, 903, 47 LEd2d 18 (1976)).

[¶24.] Ultimately, the Court held that Lassiter was not entitled to appointed counsel. *Id.* at 32-34, 101 SCt at 2162-63, 68 LEd2d 640. The Court indicated its decision was not a bright-line rule, noting:

> If, in a given case, the parent's interests were at their strongest, the State's interests were at their weakest, and the risks of error were at their peak, it could not be said that the *Eldridge* factors did not overcome the presumption against the right to appointed counsel, and that due process did not therefore require the appointment of counsel. But since the *Eldridge* factors will not always be so distributed, and since "due process is not so rigid as to require that the significant interests in informality, flexibility and economy must always be sacrificed, neither can we say that the Constitution requires the appointment of counsel in every parental termination proceeding. We therefore adopt the standard found appropriate in *Gagnon v. Scarpelli*, and leave the decision whether due process calls for the appointment of counsel for indigent parents in termination proceedings to be answered in the first instance by the trial court, subject, of course, to appellate review.

*Id.* at 31, 101 SCt at 2162, 68 LEd2d 640 (internal citations and quotations omitted). The Court also mentioned that there would not be a subsequent criminal proceeding. "[T]he petition to terminate Ms. Lassiter's parental rights contained no allegations of neglect or abuse upon which criminal charges could be based. . . ." *Id.*

at 32, 101 SCt at 2162, 68 LEd2d 640. Thus, Lassiter "could not well have argued that she required counsel for that reason." *Id.*

[¶25.] In the present case, we address (1) Apple's private interest, (2) the State's interest, and (3) the risk the civil forfeiture procedures will lead to an erroneous decision. These factors will be balanced against the presumption against appointed counsel. *Id.* at 26-27, 101 SCt at 2158-2159, 68 LEd2d 640.

[¶26.] Apple's interest involved is a property interest in the $1,010. Property interests are important and encompassed by the text of the Due Process Clause. However, property interests are always implicated in forfeiture proceedings. We find no case that holds a property interest, standing alone, requires appointment of counsel in civil forfeiture proceedings.

[¶27.] What makes this case problematic is that the State initiated this civil forfeiture proceeding before Apple had formally been charged with any criminal activity. In fact, when this matter was before the circuit court, the State had not pursued an indictment. Apple was not indicted until the State's petition for discretionary appeal was pending before this Court.

[¶28.] The State's complaint alleges Apple's property is subject to forfeiture under SDCL 34-20B-70(6). That statute includes property subject to forfeiture as:

> Any funds or other things of value used for the purposes of unlawfully purchasing, attempting to purchase, distributing, or attempting to distribute any controlled drug or substance or marijuana.

As a result, the statute makes Apple's culpability in a drug-related transaction relevant. *See* United States v. United States Coin & Currency, 401 US 715, 721-722, 91 SCt 1041, 1045, 28 LEd2d 434 (1971). More importantly, Apple faces a

subsequent criminal prosecution based upon this conduct. Thus, the paramount concern present in *Boyd*, and notably absent in *Ward* and *Lassiter*, is present here: there is a real and significant danger that Apple could prejudice himself in respect to the subsequent criminal proceeding.

[¶29.] Although not squarely before this Court, the United States Supreme Court has held the Fifth Amendment Self-Incrimination Clause and the Fourth Amendment prohibition against unreasonable searches and seizures applies under these circumstances. Consequently, Apple has far more at stake than his property interest in the $1,010.

[¶30.] The State's interest is two fold. First, it has an interest in deterring the purchasing and distributing of illegal drugs, as well as depriving individuals of the funds used in such transactions. Second, the State has an interest in pursuing these matters in an expeditious and inexpensive fashion. Government appointment of counsel undoubtedly takes time and drains government resources. However, this interest is less compelling in the present case. Indeed, the State can choose to pursue civil forfeiture after the criminal proceeding is complete. At that time, jeopardy will have attached to the criminal charges and the risk of prejudice is alleviated.

[¶31.] Finally, there is a risk of an erroneous deprivation in this case. Unlike most civil forfeiture proceedings, there have not been any findings concerning the underlying criminal conduct. *See* United States v. Forfeiture Property All Appurtenances & Improvements, 803 FSupp 1194, 1197 (ND Texas 1992) (little risk of erroneous deprivation where defendants pled guilty to underlying criminal

conduct); Commonwealth v. $9,847.00 in American Currency, 704 A2d 612, 616 (PA 1997) (risk of erroneous deprivation minimal because "in most cases, a forfeiture proceeding will be preceded by either a criminal conviction or a guilty plea to a violation.").

[¶32.] After examining these factors, we hold that the significant risk of prejudice in the future criminal proceeding coupled with the State's minimal interest in pursuing these matters prior to a criminal prosecution and the risk of erroneous deprivation outweighs the presumption against appointed counsel. To hold otherwise, would allow the State an end run around the Sixth Amendment by filing civil forfeiture proceedings in order to gain admissions to bolster its criminal case against the defendant.

[¶33.] The State cites numerous cases where courts have denied appointed counsel in civil forfeiture proceedings. However, the State cites no case that involved a civil forfeiture proceeding initiated prior to criminal charges.

[¶34.] "For all its consequence, due process has never been, and perhaps can never be, precisely defined." *Lassiter*, 452 US at 24, 101 SCt at 2158, 68 LEd2d 640 (internal quotations omitted). "Unlike some legal rules, th[e] [United States Supreme Court] has said, due process is not a technical conception with a fixed content unrelated to time, place and circumstances." *Id.* (quoting Cafeteria Workers v. McElroy, 367 US 886, 895, 81 SCt 1743, 1748, 6 LEd2d 1230 (1961)). Under these circumstances, there is no showing the circuit court erred in appointing counsel to represent Apple.

[¶35.] Affirmed.

[¶36.]     KONENKAMP and MEIERHENRY, Justices, concur.

[¶37.]     GILBERTSON, Chief Justice, and ZINTER, Justice, concur in part and dissent in part.

GILBERTSON, Chief Justice (concurring in part and dissenting in part).

[¶38.]     I agree with the Court that there is no statutory right to counsel in a forfeiture proceeding.  I also agree that the Sixth Amendment right to counsel is not triggered in a civil forfeiture proceeding.  Where I part ways with the Court, is with the proposition that the Due Process Clause of the Fourteenth Amendment requires appointment of counsel at taxpayer expense in a civil forfeiture proceeding.

[¶39.]     The Due Process Clause of the Fourteenth Amendment "imposes on States standards necessary to ensure that judicial proceedings are fundamentally fair."  Lassiter v. Dept. of Social Services, 452 US 18, 33, 101 SCt 2153, 2163, 68 LEd2d 640 (1981).  However, there are limitations on when the State is required to provide an indigent defendant with counsel.  *Id.* at 25, 101 SCt 2158, 68 LEd2d 640. *Lassiter* reiterated the general rule concerning the right to counsel under the Due Process Clause:  "counsel must be provided before any litigant may be sentenced to prison, even where the crime is petty and the prison term brief."  *Id.*  It then provided a review of jurisprudence in this area by noting that the Court did not find a *per se* right to counsel existed for probationers facing revocation hearings, Gagnon v. Scarpelli, 411 US 778, 93 SCt 1756, 36 LEd2d 656 (1973), or a right to appointed counsel for criminal prosecutions that do not result in the defendant's loss of personal liberty.  Scott v. Illinois, 440 US 367, 99 SCt 1158, 59 LEd2d 383 (1979).

[¶40.] The precedents have resulted in a presumption against providing an indigent litigant with appointed counsel unless "if he loses, he may be deprived of his physical liberty." *Lassiter*, 452 US at 27, 101 SCt at 2159, 68 LEd2d 640. The Court's precedents clearly require that other courts that undertake Due Process analysis do so in a manner that weighs the other elements in the due process decision "against this presumption." *Id*.

[¶41.] The three elements against which the presumption must be weighed are: 1) the privacy interests at stake, 2) the government's interests, and 3) the risk that the procedure used will lead to erroneous decisions. *Id*. (citing Mathews v. Eldridge, 424 US 319, 335, 96 SCt 893, 903, 47 LEd2d 18 (1976)). The elements are balanced against each other and their net weight is then weighed against the presumption that the right to appointed counsel exists only where the indigent litigant, if he is unsuccessful, may lose his personal freedom. *Id*.

[¶42.] The Court maintains that because Apple's culpability in a drug-related transaction is relevant under the forfeiture proceeding, he faces a real and significant danger that he could prejudice himself in subsequent criminal proceedings. The Court goes on to state that "Apple has far more at stake than his property interest in $1,010" due to the protections of the Fifth Amendment right against self incrimination and the Fourth Amendment prohibition against unreasonable searches and seizures. *Supra* ¶29.

[¶43.] However, this discussion misses the most salient point in the United States Supreme Court's Due Process jurisprudence. The Due Process Clause is triggered only if the indigent litigant, *if unsuccessful*, faces the potential loss of

personal freedom. In the instant case, the language *"if unsuccessful"* refers to whether Apple will lose in the forfeiture action. Only if Apple loses in the forfeiture action, and as a result of that loss faces the potential loss of freedom, would the right to counsel trigger.

[¶44.] Apple faces only the loss of the $1,010 in the forfeiture action, not the loss of his personal freedom. His innocence or guilt in the future criminal prosecution would not be determined in or by the civil forfeiture proceeding. At the forfeiture proceeding, the State must be able to show by a preponderance of the evidence that the $1,010 was subject to forfeiture. SDCL 34-20B-70.[3] This

---

3.    SDCL 34-20B-70 provides:
The following are subject to forfeiture and no property right exists in them:
(1)    All controlled drugs and substances and marijuana which have been manufactured, distributed, dispensed, or acquired in violation of the provisions of this chapter or chapter 22-42;
(2)    All raw materials, products, and equipment of any kind which are used or intended for use, in manufacturing, compounding, processing, importing, or exporting any controlled drug or substance or marijuana in violation of the provisions of this chapter or chapter 22- 42;
(3)    All property which is used, or intended for use, as a container for property described in subdivisions (1) and (2);
(4)    All conveyances including aircraft, vehicles, or vessels, which transport, possess, or conceal, or which are used, or intended for use, to transport, or in any manner facilitate the transportation, sale, receipt, possession, or concealment of marijuana in excess of one-half pound or any quantity of any other property described in subdivision (1) or (2), except as provided in §§ 34-20B-71 to 34-20B-73, inclusive. This subdivision includes those instances in which a conveyance transports, possesses or conceals marijuana or a controlled substance as described herein without the necessity of showing that the conveyance is specifically being used to transport, possess, or conceal or facilitate the transportation, possession, or concealment of marijuana or a controlled substance in aid of any other offense;

(continued . . .)

standard of proof falls far shy of the required showing in a criminal conviction of proof beyond a reasonable doubt. Therefore, the present action does not trigger the first step in the Due Process examination as Apple does not face the potential loss of his personal freedom in the event of a loss in the civil forfeiture action.

[¶45.]         Even if we were to suspend that portion of the test and conduct the *Mathews* elements of balancing, Apple would still not be entitled to court-appointed representation in the civil forfeiture. Apple's only liberty interest in the civil forfeiture action is the loss of $1,010. While this might be a significant sum of money, it is not in the nature of the loss of freedom, the loss of parental rights, or the revocation of parole. The right to one's money or property is a legitimate property interest, but not a liberty interest on the scale of personal freedom.

[¶46.]         Furthermore, the United States Supreme Court has held that the pre-trial seizure of assets that prevents a defendant from using funds frozen in a federal drug money forfeiture action to hire defense counsel does not violate the Fifth Amendment's Due Process Clause; as such a seizure does not cause an imbalance of forces between the accused and the government. United States v. Monsanto, 491

---

(. . . continued)

(5)    All books, records, and research, including formulas, microfilm, tapes, and data which are used, or intended for use, in violation of this chapter;

(6)    Any funds or other things of value used for the purposes of unlawfully purchasing, attempting to purchase, distributing, or attempting to distribute any controlled drug or substance or marijuana;

(7)    Any assets, interest, profits, income, and proceeds acquired or derived from the unlawful purchase, attempted purchase, distribution, or attempted distribution of any controlled drug or substance or marijuana.

US 600, 614, 109 SCt 2657, 2666, 105 LEd2d 512 (1989).  The Court specifically noted that "permitting a defendant to use assets for his private purposes that, under this provision, will become the property of the United States if a conviction occurs cannot be sanctioned."  *Id*. at 613, 109 SCt at 2665, 105 LEd2d 512.  There is no legal justification to force the expenditure of taxpayer funds on a defendant's attempt to retain funds that may be the fruit of illegal drug trafficking.

[¶47.]       Finally, the appointment of counsel for Apple would undoubtedly assist him to understand and answer the State's interrogatories, and in navigating through the civil forfeiture action.  Appointing counsel in order for Apple to present the very same evidence he filed with the circuit court as to the source of the $1,010 would not decrease the risk that the civil forfeiture action would result in an erroneous decision.  The *Eldridge* factors do not tip the scale in favor of appointing representation.

[¶48.]       The Court has stated that Apple's Fifth Amendment right against self incrimination is implicated at the civil forfeiture proceedings.  It is true that "the Fifth Amendment not only protects the individual against being involuntarily called as a witness against himself in a criminal prosecution but also privileges him not to answer official questions put to him in any other proceeding civil or criminal, formal or informal, where the answers might incriminate him in future criminal proceedings."  State v. Abraham, 318 NW2d 775, 777 (SD 1982) (citing Kastigar v. United States, 406 US 441, 92 SCt 1653, 32 LEd2d 212 (1972)).  However, before the protections of the Fifth Amendment apply a defendant must first show that his previous testimony was compelled.  *Id*. (citing Garner v. United States, 424 US 648,

96 SCt 1178, 47 LEd2d 370 (1976); Hoffa v. United States, 385 US 293, 87 SCt 408, 17 LEd2d 374 (1966); State v. Roth, 84 SD 44, 166 NW2d 564 (1969)).

[¶49.]       Apple argues that any testimony he might give at the civil forfeiture action might be used against him at a subsequent criminal proceeding.  However, Apple is not being compelled to be a witness against himself at the civil forfeiture action.  He was able to file motions to release the money and resist the action and for a continuance.  Apple's only stated reason for petitioning for appointed counsel was his purported inability to understand the State's interrogatories in the civil forfeiture action.  I am unaware of any constitutional or statutory provision that allows the court appointment of counsel because a civil litigant claims he or she cannot understand a request for discovery.

[¶50.]       The United States Supreme Court has held that pre-trial seizure of suspected drug money does not result in a Due Process violation when the seizure prevents a defendant from hiring counsel of choice and *may* result in the loss of personal freedom in an impending criminal trial.  Moreover, there is no precedent in any jurisdiction for the notion that an indigent litigant has a Due Process right to state appointed counsel at a civil forfeiture action because the collateral consequences of the proceeding *may* result in a loss of personal freedom upon criminal conviction.  I would reverse the circuit court's appointment of counsel.

ZINTER, Justice (concurring in part and dissenting in part).

[¶51.]       I concur in the Court's analysis finding no statutory or Sixth Amendment basis for court-appointed counsel.  However, I respectfully dissent from

that portion of the Court's opinion concluding that the Due Process Clause requires the appointment of counsel in the discovery phase of a civil forfeiture case.

[¶52.] The basis for the Court's opinion, as well as its conclusion that the State's overwhelming case authority is inapposite, is the Court's observation that the civil forfeiture was initiated before a criminal action was commenced. From this, the Court *assumes* that the civil forfeiture will be pursued prior to a criminal prosecution. *Supra* ¶¶31-33. And, from this assumption, the Court *speculates* that "there is a real and significant danger that Apple *could* prejudice himself in respect to the subsequent criminal proceeding." *Supra* ¶28 (emphasis added). Based upon this foundational chain of assumption and speculation, the Court ultimately concludes that due process mandates court-appointed counsel in the discovery phase of civil litigation. However, the Court's assumptions and speculations are unsupported by the record, are erroneous; and, even if they were correct, are irrelevant.

[¶53.] It is noteworthy that the Court acknowledges that the risk of prejudice requiring court-appointed counsel would be alleviated if the State chose to prosecute the civil forfeiture after the criminal proceeding. *Supra* ¶30. Yet, the Court fails to acknowledge that there is no record evidence that the State intends to proceed with the forfeiture before the criminal proceeding is concluded. There is no such evidence because, at the time the circuit court appointed counsel and at the time this appeal was taken, no criminal proceeding had been commenced. Thus, the Court's only source for the existence of a criminal proceeding is the State's extra-

record disclosure in its Reply Brief; information of which the circuit court was unaware.

[¶54.]      But more fundamentally, if one reviews the only record evidence concerning this matter, this Court's speculation is erroneous.  The only evidence on this point suggests that the forfeiture will not be prosecuted before the criminal case.  In its brief to this Court, the State answered this Court's contrary speculation by citing evidence suggesting that the forfeiture would be delayed until after Apple's criminal case was prosecuted:  the State identified an exhibit reflecting that Apple had executed a waiver of his statutory right to the forfeiture trial within sixty days.[4]  And, because the State must try Apple's criminal case within 180 days of his first appearance, SDCL 23A-44-5.1, the likelihood of prosecuting the forfeiture first is more implausible than realistic.

[¶55.]      It must also be reiterated that the circuit court did not appoint counsel under the constitutional theory adopted by this Court, or in fact, under any constitutional or statutory theory.  The record reflects that when the circuit court

---

4.      SDCL  34-20B-88 provides:

> If a verified answer is filed, the forfeiture proceedings shall be set for hearing on a day not more than sixty days therefrom; at the hearing, the state shall establish probable cause for instituting the forfeiture action following which any owner, party in interest or claimant who has filed a verified answer shall have the burden of proving that the property seized is not subject to forfeiture under this chapter.  If the court finds that the property is not subject to forfeiture under this chapter, the court shall order the property released to the owner, party in interest or claimant as his right, title or interest appears; the court shall order the property forfeited if it determines that such property was subject to forfeiture.

made its decision, Apple had not been indicted, the forfeiture was in the discovery phase, and the circuit court simply appointed counsel to assist in civil discovery. As far as authority for the appointment, the circuit court stated that it was a matter of "equity"[5] because Apple wanted to establish that he earned the money "through the sweat of his brow," and the circuit court was not going to require him to "run up against the Attorney General's office and their skills and ability without an attorney."

[¶56.]     Clearly, circuit courts do not have authority to appoint publicly financed counsel simply because they wish to do equity in a civil case. It appears that there are currently four sources of authority to appoint counsel. Initially, "[t]he United States Constitution contains two sources of a right to counsel: the Fifth and Sixth Amendments." State v. Cruz, 122 P3d 543, 555 (Utah 2005) (citing Michigan v. Jackson, 475 US 625, 629, 106 SCt 1404, 89 LEd2d 631 (1986)). However, at the time the circuit court appointed counsel, no Sixth Amendment right was implicated because Apple had not been charged with a criminal offense: "The United States Supreme Court has noted that '[t]he Sixth Amendment right to counsel attaches only at the initiation of adversary criminal proceedings, and before proceedings are initiated a suspect in a criminal investigation has no constitutional right to the assistance of counsel.'" *Id.* at 555 (quoting Davis v. United States, 512 US 452, 456-57, 114 SCt 2350, 129 LEd2d 362 (1994)). Furthermore, no Fifth

---

5.     In quoting the circuit court's basis for appointing counsel at ¶6, *supra*, this Court fails to include the circuit court's opening sentence of the quotation that clearly explains its legal basis for appointing counsel; i.e., a "matter of equity."

Amendment right was implicated because Apple was not in custody on a criminal offense related to the forfeiture. *Id.* This only leaves state statutory authority, which is concededly inapplicable, or the due process balancing analysis under *Lassiter v. Department of Social Services*, 452 US 18, 27, 101 SCt 2153, 2159, 68 LEd2d 640 (1981), and *Mathews v. Eldridge*, 424 US 319, 96 SCt 893, 47 LEd2d 18 (1976). However, the circuit court's "equity" decision was not based on any of these theories. Therefore, this Court certainly errs in affirming the circuit court's analysis. *See supra* ¶34.

[¶57.]     With respect to the merits of a due process right to counsel, the Court fails to recognize *when* a real and significant danger of loss of liberty arises in civil litigation. It may arise if Apple *elects* to waive his Fifth Amendment rights, or it will arise if the State seeks to *compel* Apple's testimony. However, at the time of the appointment and at the time this appeal was taken, there was no evidence that the State sought to compel testimony. And, Apple is, of course, free to waive his Fifth Amendment rights in any civil litigation. It is also noteworthy that Apple had only sought counsel at the discovery stage[6] of the forfeiture. Therefore, like any other civil case not involving compelled testimony, there was an insufficient risk of a loss of liberty at that time to invoke a due process right to counsel.

---

6.     Before counsel was appointed, Apple, without the assistance of counsel filed a "Motion for Release of Money" and a "Motion for 30-Day Continuance." He filed the latter motion on October 17, 2005, indicating that he was seeking legal assistance, was gathering evidence, and was hoping to finish answering the first set of interrogatories. He asked for the continuance only because he was having difficulty in meeting the deadlines. He also filed answers to interrogatories on October 31, 2005, without the apparent assistance of counsel.

#23878

[¶58.] This Court cites no decision supporting its opinion, and it is contrary to the decisions of other courts that have considered the issue. For example, even though a defendant had pleaded guilty, the Pennsylvania Supreme Court *categorically* concluded that:

> [T]he Due Process Clause of the Fourteenth Amendment to the United States Constitution does not require that court-appointed counsel be provided to indigent claimants in civil forfeiture cases under Pennsylvania's Controlled Substances Forfeitures Act. [7]
> Because a claimant in a civil forfeiture proceeding is not in danger of a loss of personal liberty should he be unsuccessful at trial, we now hold that there is no constitutional right to the appointment of counsel for indigent claimants in civil forfeiture matters under . . . the United States Constitution.

Com. v. $9,847.00 U.S. Currency, 550 Pa 192, 201, 704 A2d 612, 617 (1997). *See also* People v. Madeyski, 94 CalApp4th 659, 664, 115 CalRptr2d 14, 17 (CalApp6 Dist 2001) (finding no due process right to court-appointed counsel); People v. $30,000 U.S. Currency, 35 CalApp4th 936, 942-943, 41 CalRptr2d 748, 752 (CalApp4Dist 1995) (although the defendant's criminal proceedings had

---

7. The Pennsylvania Supreme Court cited the following cases as consistent with its holding:

> United States v. $292,888.04 U.S. Currency, 54 F3d 564 (9thCir 1995); United States v. 1604 Oceola, Wichita Falls, Texas, 803 FSupp 1194 (NDTex 1992); United States v. 1606 Butterfield Rd. Dubuque, Iowa, 786 FSupp 1497 (NDIowa 1991); United States v. 4204 Cedarwood, Matteson, IL, 614 FSupp 183 (DCIll [sic] 1985); Resek v. State, 706 P2d 288 (Alaska 1985); People v. $30,000 United States Currency, 35 CalApp4th 936, 41 CalRptr2d 748 (1995); Morgenthau v. Garcia, 148 Misc2d 900, 561 NYS2d 867 (1990).

> Com. v. $9,847.00 U.S. Currency, 550 Pa 192, 201, 704 A2d 612, 617, n9 (1997).

-24-

concluded, the court found that because a defendant's participation in a civil forfeiture proceeding is voluntary, there is no due process right to counsel); State v. One Blue Corvette, 732 A2d 856, 859 (Me 1999) (court mistakenly appointed counsel in forfeiture proceeding).

[¶59.] Considering the rationale of the cases that have considered this issue, this Court is wrong in asserting that the State's cases are all distinguishable because they do not involve civil forfeiture proceedings initiated prior to criminal charges. *Supra* ¶33. The courts that have considered the due process issue have failed to attach any relevance to the status of the criminal proceedings. *Supra* ¶58. Instead, they categorically find no due process right to counsel. Therefore, I would follow precedent. I would decline to plow new ground unearthing an unprecedented constitutional right to court-appointed counsel in the discovery phase of a civil case.