TJOFLAT, Circuit Judge, specially
concurring:
I agree with the court’s decision to reverse and remand, but I write separately because I disagree with the court’s rationale for its decision. The court reverses and remands because it holds that the district court misapplied the four factor test from United States v. Bissell.[1] That test, which uses Barker v. Wingo’s Sixth Amendment speedy-trial standard to resolve the procedural due process issue this appeal presents, was not necessary to the holding in Bissell and is therefore nonbinding dicta. The district court erred in relying on the Bissell test because the test cannot, in my view, be squared with Supreme Court procedural due process precedent.[2] As I shall explain, the court should have resolved this appeal using that Supreme Court precedent rather than the contradictory dicta from our own circuit.
*1261 I.
In Bissell, the defendants were indicted for various violations of the federal narcotics laws. Bissell, 866 F.2d at 1347. The grand jury later returned two superceding indictments, containing counts seeking the forfeiture of assets pursuant to 21 U.S.C. § 853. Id. After the superseding indictments were returned, the Government appeared before the district court ex parte and obtained the issuance of warrants authorizing the Government to seize the assets listed in the forfeiture counts,[3] including the defendants’ bank accounts. Id. The Government then executed the warrants and seized the assets. Id. In due course, the case proceeded to trial, and the defendants were convicted. Id. at 1348 & n. 2. At sentencing, the assets listed in the forfeiture counts were forfeited to the United States as part of the defendants’ sentences.
At no point following the Government’s seizure of the defendants’ assets did any of the defendants move the district court to quash the warrants or otherwise challenge the validity of the Government’s retention of their assets.[4] Id. at 1353. On appeal, for the first time, the defendants challenged “the constitutionality of the ex parte, pretrial restraints on their assets.” Id. at 1348.[5] Even in their brief on appeal, the defendants failed to argue that they were entitled to a pretrial, post-restraint hearing.
On its own initiative, however, the court posed the question the defendants had never asked: whether, after issuing the warrants, the district court should have held a pretrial hearing to determine whether the application for the warrants authorizing the seizures was supported by probable cause. The court then answered its own question by stating that under the Sixth Amendment speedy-trial standard of Barker v. Wingo, a pretrial evidentiary hearing was not required.[6] The court’s answer constituted pure dicta, as the ques *1262 tion was never raised by any party, was unnecessarily injected into the case by the court itself, and was therefore unnecessary to the resolution of the Bissell defendants’ appeals.[7]
II.
If we acknowledge that Bissell’s discussion of the issue at hand is dicta, we are left with no binding precedent on the question of whether a criminal defendant standing in the Kaleys’ shoes is entitled as a matter of due process to a post-restraint hearing prior to trial.[8] In the absence of binding precedent, the panel should have looked to the general requirements of procedural due process. See United States v. E-Gold Ltd., 521 F.3d 411, 415 (D.C.Cir. 2008) (using this approach to determine whether a post-restraint, pretrial hearing was due). The court’s approach today, following the dicta in Bissell, contravenes these principles.
“The fundamental requirement of due process is the opportunity to be heard ‘at a meaningful time and in a meaningful manner’ ” upon the deprivation of. liberty or property. Mathews v. Eldridge, 424 U.S. 319, 333, 96 S.Ct. 893, 902, 47 L.Ed.2d 18 (1976) (quoting Armstrong v. Manzo, 380 U.S. 545, 552, 85 S.Ct. 1187, 1191, 14 L.Ed.2d 62 (1965)). This basic statement of due process requires different measures in different contexts. Morrissey v. Brewer, 408 U.S. 471, 481, 92 S.Ct. 2593, 2600, 33 L.Ed.2d 484 (1972) (“[D]ue process is flexible and calls for such procedural protections as the particular situation demands.”); Mullane v. Cent. Hanover Bank & Trust Co., 339 U.S. 306, 313, 70 S.Ct. 652, 657, 94 L.Ed. 865 (1950) (holding that due process requires a hearing “appropriate to the nature of the case”). In any particular context, three factors are relevant to the question of what constitutes a meaningful hearing:
First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures uséd, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government’s interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.
Mathews, 424 U.S. at 335, 96 S.Ct. at 903.
Under ordinary circumstances, the private interest weighs heavily enough to require the government to provide notice and some sort of hearing prior to the deprivation. United States v. James Dan *1263 iel Good Real Property, 510 U.S. 43, 53, 114 S.Ct. 492, 501, 126 L.Ed.2d 490 (1993) (civil forfeiture); Fuentes v. Shevin, 407 U.S. 67, 82, 92 S.Ct. 1983, 1994-95, 32 L.Ed.2d 556 (1972) (“Although ... due process tolerates variances in the form of a hearing appropriate to the nature of the case, ... the Court has traditionally insisted that, whatever its form, opportunity for that hearing must be provided before the deprivation at issue takes effect.”) (quotation omitted). In Fuentes, for example, the Court struck down a state law that allowed creditors, ex parte, to obtain a prejudgment writ ordering the sheriff to seize a debtor’s goods. The law failed because it did not afford the debtor notice and a hearing prior to the seizure. Fuentes, 407 U.S. at 83, 92 S.Ct. at 1995, 92 S.Ct. 1983; see also Wolff v. McDonnell, 418 U.S. 539, 557-58, 94 S.Ct. 2963, 2975, 41 L.Ed.2d 935 (1974) (“[S]ome kind of hearing is required at some time before a person is finally deprived of his property interests.”); Connecticut v. Doehr, 501 U.S. 1, 18, 111 S.Ct. 2105, 2116, 115 L.Ed.2d 1 (1991) (requiring prior notice and a hearing in the absence of “exigent eircumstance[s]”).
In extraordinary situations, notice and a hearing may be postponed until after the deprivation. Good Real Property, 510 U.S. at 53, 114 S.Ct. at 501 (“We tolerate some exceptions to the general rule requiring predeprivation notice and hearing, but only in extraordinary situations where some valid governmental interest is at stake that justifies postponing the hearing until after the event.”) (quotations omitted). In Mitchell v. W.T. Grant, 416 U.S. 600, 611, 94 S.Ct. 1895, 1902, 40 L.Ed.2d 406 (1974), for example, the Court distinguished Fuentes and upheld a statute allowing creditors to sequester the goods of delinquent debtors without affording them prior notice and a hearing. Under the statute in Mitchell, to sequester the goods, a creditor could file an ex parte application with a judge showing that the delinquent debtor had the power to “conceal, dispose of, or waste the property or the revenues therefrom, or remove the property from the parish, during the pendency of the action.” Id. at 605, 94 S.Ct. at 1899 (quoting La.Code Civ. Proc. Ann. art. 3571). If satisfied with the showing, the judge would then issue a writ of sequestration. Id. at 605-06, 94 S.Ct. 1895; see also Calero-Toledo v. Pearson Yacht Leasing Co., 416 U.S. 663, 679-80, 94 S.Ct. 2080, 2089-90, 40 L.Ed.2d 452 (1974) (allowing postponement of notice and a hearing until after the seizure of a yacht in part because preseizure notice might have prompted the defendant to destroy, conceal, or remove the property).
If postponed, however, notice and a hearing must be given immediately after the deprivation. See Mitchell, 416 U.S. at 606, 94 S.Ct. at 1899. Under the statute upheld in Mitchell, a creditor could obtain a writ of sequestration based on an ex parte judicial determination, but the debt- or, afterwards, could “immediately ... seek dissolution of the writ.” Id. (emphasis added). Similarly, in Barry v. Barchi, 443 U.S. 55, 99 S.Ct. 2642, 61 L.Ed.2d 365 (1979), the Court struck down a statute allowing the New York State Racing and Wagering Board to postpone notice and a hearing until an unspecified time after the suspension of a horse racing license. It held that the provision for delaying the administrative hearing “neither on its face nor as applied in this case, assured a prompt proceeding and prompt disposition of the outstanding issues.” Barchi, 443 U.S. at 66, 99 S.Ct. at 2650.
These constitutional principles are mirrored in the framework of Rule 65 of the Federal Rules of Civil Procedure. Rule 65 provides that, under ordinary circumstances, courts have discretion to order a certain course of action by issuing a pre *1264 liminary injunction only after affording the “adverse party” notice and a hearing.[9] Prior notice and a hearing are required even if the hearing will be duplicative of the issues to be litigated at trial. See Fed.R.CivJP. 65(a)(2).
In extraordinary situations, Rule 65, like the Due Process Clause, provides an exception to the general rule of prior notice and a hearing. Rule 65 provides that a temporary restraining order (“TRO”) may be granted without notice, but only if the party requesting the order can offer specific facts clearly showing that “immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition.” Fed. R.Civ.P. 65(b)(1)(A). TROs are “designed to preserve the status quo until there is an opportunity to hold a hearing on the application for a preliminary injunction.” 11A Charles Alan Wright, Arthur R. Miller, & Mary Kay Kane, Federal Practice and Procedure: Civil § 2951, at 253 (2d. ed. 1995).
Consistent with due process, Rule 65 requires a prompt post-restraint hearing when a TRO is granted. TROs expire after a fixed period of time set by the court that can be no longer than ten days. Fed.R.Civ.P. 65(b)(2). Immediately after the TRO is granted, therefore, the applicant must move for a preliminary injunction, which requires prior notice and a hearing. Fed R. Civ. P. 65(a); see Fed. R.Civ.P. 65(b)(3). Unless notice and a hearing are afforded within the ten-day period, the TRO will expire.
Congress also recognized these norms in those parts of the criminal forfeiture statute that regulate protective orders entered prior to the return of an indictment, 21 U.S.C. § 853.[10] Before the indictment is returned, § 853 authorizes the court to restrain property only “after notice to persons appearing to have an interest in the property and opportunity for a hearing.” § 853(e)(1)(B). At the hearing, before it issues the restraint, the court must determine that “there is a substantial probability that the United States will prevail on the issue of forfeiture.” § 853(e)(l)(B)(i). Section 853, like Rule 65, allows this hearing to be delayed until after the restraint occurs only in exceptional cases. When an indictment has not yet been returned, the court may enter a temporary restraining order without notice or opportunity for a hearing “if the United States demonstrates that there is probable cause to believe that ... provision of notice will jeopardize the availability of the property for forfeiture.” § 853(e)(2). Even in these rare cases, however, the hearing must be held within ten days of the restraint, or the restraint will expire: “[sjuch a temporary order shall expire not more than ten days after the date on which it is entered .... A hearing requested concerning [a TRO] shall be held at the earliest possible time and prior to the expiration of the temporary order.” Id.
*1265 In those parts of the criminal forfeiture statute that regulate protective orders entered following the return of an indictment, however, Congress was silent as to whether the defendant is entitled to a post-restraint hearing prior to trial. See id. § 853(e)(1)(A). I apply the general due process requirements discussed above to determine that the Constitution requires that such a hearing be held in this context.
III.
In general, then, once property has been seized or restrained by a court order, the property owner must, at minimum, be given notice of the seizure or restraint and a prompt hearing. The Government argues for a departure from this general rule in cases like this one, where the court restrains property subject to forfeiture in a criminal case. The Government argues that, in these cases, a hearing on the propriety of the restraint may be delayed until the criminal case comes to trial. To determine whether the Kaleys’ case justifies a departure from the general requirement of a prompt post-restraint hearing, I examine the three relevant interests that have been set out by the Supreme Court: (1) the private interest in a prompt hearing, (2) the risk of an erroneous deprivation without a prompt hearing, and (3) the government interest in delaying the hearing until trial. See Mathews v. Eldridge, 424 U.S. 319, 335, 96 S.Ct. 893, 903, 47 L.Ed.2d 18 (1976) (the “Mathews factors”).
First, the Kaleys have a private interest in using their property that is akin to the private interests in Mitchell and Fuentes. In those cases, a creditor alleged an interest in the delinquent debtor’s property and wished to freeze that property before the parties’ rights could be adjudicated. See Mitchell v. W.T. Grant Co., 416 U.S. 600, 601-02, 94 S.Ct. 1895, 1897, 40 L.Ed.2d 406 (1974); Fuentes v. Shevin, 407 U.S. 67, 69-70, 92 S.Ct. 1983, 1988-89, 32 L.Ed.2d 556 (1972). The only difference here is that the Government, rather than a private creditor, asserts the interest. In both Mitchell and Fuentes, the Court noted that, even though the status of the property was contested, the defendant retained an interest,[11] and due process therefore required a prompt hearing on the propriety of the deprivation. Mitchell, 416 U.S. at 606-07, 94 S.Ct. at 1899-1900 (holding that a statute entitling the defendant to an immediate hearing following issuance of a writ of sequestration “effected] a constitutional accommodation of the conflicting interests of the parties”); Fuentes, 407 U.S. at 81-82, 92 S.Ct. at 1994-95 (holding that the defendant’s property interest requires a pre-seizure hearing).
The Kaleys also have an additional private interest in a prompt hearing that is not present in the civil context because, as a result of the protective order, they cannot use their assets to employ their preferred attorneys. The protective order therefore implicates their Sixth Amendment right to counsel of choice. The right *1266 to counsel of choice, while not absolute, is not satisfied merely because the defendant is able to retain adequate substitute counsel. It protects a criminal defendant’s ability to hire the particular lawyer he prefers. United States v. Gonzalez-Lopez, 548 U.S. 140, 146, 126 S.Ct. 2557, 2562, 165 L.Ed.2d 409 (2006) (“[T]he Sixth Amendment right to counsel of choice ... commands, not that a trial be fair, but that a particular guarantee of fairness be provided — to wit, that the accused be defended by the counsel he believes to be best.”). In this case, therefore, it is irrelevant from a Sixth Amendment point of view that the Kaleys have $270,000 in unrestrained assets with which to hire less expensive counsel. What matters is that, without access to the property covered by the protective order, the Kaleys are unable to retain their preferred attorneys, Howard Srebnick and Susan Van Dusen.
Delaying the due process hearing until trial will only temporarily deprive the Kaleys of their property rights, but it will completely eviscerate their right to counsel of choice. After the verdict is handed down, of course, the Kaleys will no longer need to retain Srebnick and Van Dusen. “While the [Sixth Amendment] deprivation is nominally temporary, it is ‘in that respect effectively a permanent one.’ ‘The defendant needs the attorney now if the attorney is to do him any good.’ ” United States v. E-Gold, Ltd., 521 F.3d 411, 417-18 (D.C.Cir.2008) (quoting United States v. Monsanto, 924 F.2d 1186, 1193 (2d Cir. 1991) (en banc); United States v. Moya-Gomez, 860 F.2d 706, 726 (7th Cir.1988)) (emphasis in original). The Sixth Amendment interest, for that reason, weighs heavily in the balance.
I next analyze the second factor, the risk of an erroneous deprivation without an immediate hearing. In this case, prosecutorial incentives increase the likelihood of an erroneous deprivation in the absence of a prompt hearing. A prosecutor has everything to gain by restraining assets that ultimately may not be forfeited. By doing so, he can stack the deck in the government’s favor by crippling the defendant’s ability to afford high-quality counsel. If the prosecutor can delay judicial oversight of the restraint until trial, he also has nothing to lose, as he does not have to dedicate any extra resources to defending his decision.
Also relevant to the risk of an erroneous deprivation is “the probable value, if any, of additional or substitute procedural safeguards.” Mathews, 424 U.S. at 335, 96 S.Ct. at 903. In this case, without a prompt hearing, probable cause rests, initially, on the grand jury having found probable cause before returning the indictment and, then, on the district court’s finding of probable cause, both of which findings were made on the Government’s ex parte showing.[12] Neither procedure significantly reduced the risk of an erroneous deprivation. In grand jury proceedings, the government may rely, even entirely, on “read-backs and hearsay witnesses,” United States v. Waldon, 363 F.3d 1103, 1109 (11th Cir.2004) (per curiam), or illegally acquired evidence, United States v. Calandra, 414 U.S. 338, 344-45, 354-55, 94 S.Ct. 613, 618, 623, 38 L.Ed.2d 561 (1974).[13] *1267 The government has no duty to disclose exculpatory evidence to the grand jury, United States v. Williams, 504 U.S. 36, 112 S.Ct. 1735, 118 L.Ed.2d 352 (1992), and the defendant has no right to testify or even appear, see Fed.R.Crim.P. 6(d)(1). The grand jury, then, is not a mechanism well designed to protect a defendant against an erroneous deprivation.
The district court’s finding is slightly more reliable than the grand jury’s. It was, however, made upon an ex parte showing; the Kaleys had no opportunity to challenge the Government’s showing. In this sense, the court’s probable cause finding is comparable to the ex parte judicial determination in Mitchell. See Mitchell, 416 U.S. at 606, 94 S.Ct. at 1899 (describing a statute that allowed a judge to issue a writ of sequestration upon a creditor’s ex parte application). Here, as in that case, the ex parte determination is insufficient to justify delaying the post-restraint hearing for long after the restraint is imposed. See id. at 618, 94 S.Ct. at 1905 (stressing that, after the deprivation, the debtor is entitled to an immediate hearing).
Finally, I examine the Government’s interest. Citing the legislative history of the forfeiture statute, the Government asserts that:
requiring the government to prove the merits of the underlying criminal case and forfeiture pretrial would make obtaining a restraining order too difficult and would make pursuing such an order inadvisable from the government’s standpoint because of the potential for damaging premature disclosure of the government’s case and trial strategy, as well as jeopardizing the safety of witnesses and victims.
Gov’t. Br. at 31. Although these are certainly legitimate interests, the Government overlooks the fact that the party challenging the restraint bears the burden of convincing the court that probable cause is lacking. This is true whether the defendants challenge a seizure made pursuant to a § 853(f) warrant via a motion filed pursuant to Rule 41(g) of the Federal Rules of Criminal Procedure, as they could have in Bissell, or a restraint affected pursuant to a § 853(e) protective order via a motion to vacate the order.
The Mathews factors, on balance, do not justify an exception to the settled minimum due process requirement of a prompt post-restraint hearing. Accordingly, the Kaleys are entitled to a pretrial hearing on the merits of the protective order.[14] This court should therefore have reversed and remanded to the district court with in *1268 structions to afford the Kaleys a pretrial hearing at which they could show that the Government did not have probable cause to restraint their assets. Because the court mistakenly believes that it is bound by Bissell, however, the Kaleys may be deprived of this right. For these reasons, I specially concur.

. United States v. Bissell, 866 F.2d 1343 (11th Cir.1989).

. See Barker v. Wingo, 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972).

. The district court issued the warrants pursuant to 21 U.S.C. § 853(f), which states:
(f) Warrant of seizure
The Government may request the issuance of a warrant authorizing the seizure of property subject to forfeiture under this section in the same manner as provided for a search warrant. If the court determines that there is probable cause to believe that the property to be seized would, in the event of conviction, be subject to forfeiture and that an order under subsection (e) of this section may not be sufficient to assure the availability of the property for forfeiture, the court shall issue a warrant authorizing the seizure of such property,
(emphasis added). Fed.R.Crim.P. 41 provides the procedure for obtaining a search warrant and, thus, the seizure of property subject to forfeiture. Fed.R.Crim.P. 41(g) provides a procedure for challenging the seizure. See infra note 4.

. The defendants could have challenged the seizure of their property in the district court pursuant to Fed.R.Crim.P. 41(g). See supra note 3.

. The defendants had waived their challenge to the constitutionality of the ex parte restraints by not presenting it to the district court. See Madu v. U.S. Att’y Gen., 470 F.3d 1362, 1366 n. 2 (11th Cir.2006) ("[A]n argument made for the first time in the court of appeals is generally waived ....”) (citing Sterling Pin. Inv. Group, Inc. v. Hammer, 393 F.3d 1223, 1226 (11th Cir.2004)); Mills v. Singletary, 63 F.3d 999, 1008 n. 11 (11th Cir.1995) ("The law in this circuit is clear that arguments not presented in the district court will not be considered for the first time on appeal.”); Lancaster v. Newsome, 880 F.2d 362, 371 (11th Cir.1989); Stephens v. Zant, 716 F.2d 276, 277 (5th Cir. 1983) (per curiam).

. Since the court recognized that the defendants had never asked the district court for a hearing, one could interpret its application of the Barker v. Wingo standard as a statement that a district court is required to consider whether to hold a pretrial hearing even though the defendant does not request a hearing. There is no basis for this interpretation.

. A reading of the Bissell opinion clearly demonstrates that the court did not entertain the question and answer it under the rubric of the plain error doctrine. See United States v. Evans, 478 F.3d 1332, 1338 (11th Cir.2007) (finding that defendant’s due process argument was subject to plain error review because it was not raised before the district court).

. In United States v. Monsanto, 491 U.S. 600, 603-06, 109 S.Ct. 2657, 2660-61, 105 L.Ed.2d 512 (1989), the Supreme Court explicitly sidestepped this question. In that case, the Government, ex parte, obtained a pre-trial order restraining the defendant's purportedly forfeitable assets. The defendant moved to vacate the order, and the district court heard the motion in a four-day evidentiary hearing. The district court found probable cause for restraining the defendant’s assets and thus upheld the order. The defendant then took an interlocutory appeal, which worked its way to the United States Supreme Court. The Court upheld the validity of the restraining order, holding that “assets in a defendant’s possession may be restrained in the way they were here based on a finding of probable cause to believe that the assets are forfeitable.” Monsanto, 491 U.S. at 615, 109 S.Ct. at 2666. It declined “to consider whether ... a hearing was required by the Due Process Clause” because the district court had held an extensive post-restraint hearing on the issue. Id. at 615 n. 10, 109 S.Ct. at 2666 n. 10.

. In noting the similarities between the due process requirement of a prompt post-restraint hearing and Rule 65, I do not adopt the view that due process necessarily requires Rule 65 compliance. See United States v. Holy Land Foundation for Relief and Development, 493 F.3d 469, 473-76 (5th Cir.2007) (en banc); but see United States v. Roth, 912 F.2d 1131, 1133 (9th Cir.1990) (“[I]n order for a restraining order under [21 U.S.C.] § 853 to be constitutional, the district court must hold a hearing under Rule 65."). I refer to Rule 65 only to underscore the point that in those exceptional cases where notice and a hearing are delayed until after the restraint occurs, the hearing ought to be conducted as promptly as possible.

. Section 853 speaks to the return of an indictment or the filing of an information. I refer here only to indictments.

. Our decision in United States v. Bailey, 419 F.3d 1208 (11th Cir.2005), further affirms that criminal defendants retain an interest in forfeitable property. Prior to Bailey, some courts had held that potentially forfeitable assets vest in the government immediately upon commission of the act giving rise to the forfeiture. Under such a rule, the government takes all right and title to forfeitable assets even before investigation and indictment of the criminal defendant. Bailey clarified that there is no “unheard-of provision for immediate, undecreed, secret vesting of title in the United States.” Bailey, 419 F.3d at 1213 (quoting United States v. 92 Buena Vista Ave., 507 U.S. 111, 134, 113 S.Ct. 1126, 1140, 122 L.Ed.2d 469 (1993) (Scalia, J. concurring in the judgement)). Under Bailey, potentially forfeitable assets listed in the forfeiture count do not vest in the government until they are actually forfeited upon conviction or court order. See id.

. In some cases, the court may treat the indictment, standing alone, as establishing probable cause. The magistrate judge did that here. It was only after the Kaleys moved the court to vacate the protective order that the magistrate judge required the prosecutor to present, in camera, independent proof of probable cause.

. The government may even rely on testimony that turns out to be perjured. See Anderson v. Sec'y for the Dep't. of Corr., 462 F.3d 1319, 1326-27 (11th Cir.2006) (per curiam).

. The majority of our sister circuits that have considered the issue are in accord. See E-Gold, 521 F.3d at 419 (requiring a post-restraint, pretrial hearing when the defendant needs the assets to meaningfully exercise the right to counsel); Monsanto, 924 F.2d at 1203 (same); Moya-Gomez, 860 F.2d at 728-29 (same); United States v. Lewis, 759 F.2d 1316, 1324-25 (8th Cir.1985) (same with respect to restraining orders issued pursuant to 21 U.S.C. § 848); United States v. Crozier, 777 F.2d 1376, 1383-84 (9th Cir.1985) (noting due process requirement of a post-restraint hearing in cases involving § 853 orders); see also United States v. Melrose East Subdivision, 357 F.3d 493, 499 (5th Cir.2004) (noting the "broad agreement that due process requires the district court to hold a prompt hearing at which the property owner can contest the restraining order — without waiting until trial to do so — at least when the restrained assets are needed to pay for an attorney”); cf. United States v. Long, 654 F.2d 911, 915 (3rd Cir.l981)(rejecting due process challenge to restraining order issued pursuant to § 848 where order issued after hearing); United States v. Farmer, 274 F.3d 800, 803, 805-06 (4th Cir.2001) (requiring a post-restraint, pretrial hearing but only where the defendant shows the restrained assets are untainted and necessaiy to secure counsel of choice); United States v. Jones, 160 F.3d 641, 647 (10th Cir. 1998)(same).