NONPRECEDENTIAL DISPOSITION

To be cited only in accordance with Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Submitted October 23, 2017
Decided October 24, 2017

**Before**

FRANK H. EASTERBROOK, *Circuit Judge*

MICHAEL S. KANNE, *Circuit Judge*

DAVID F. HAMILTON, *Circuit Judge*

No. 17-1169

| | |
|---|---|
| UNITED STATES OF AMERICA, *Plaintiff-Appellee*, | Appeal from the United States District Court for the Central District of Illinois. |
| *v.* | No. 13-30072-002 |
| GREGORY D. TORAN, *Defendant-Appellant*. | Sue E. Myerscough, *Judge*. |

**O R D E R**

Gregory Toran and his business partner provided Medicaid recipients with transportation to and from healthcare providers. But over the years their company also billed the State of Illinois for hundreds of trips that never occurred. After a lengthy bench trial, Toran was convicted of conspiring to commit mail fraud, 18 U.S.C. §§ 371, 1341, and mail fraud, *id.* § 1341. His business partner, who had pleaded guilty, was a principal witness for the government. Toran was sentenced to 60 months' imprisonment—below the guidelines range—and ordered to pay $4.7 million in restitution. He filed a notice of appeal, but his newly appointed lawyer asserts that the appeal is frivolous and moves to withdraw under *Anders v. California*, 386 U.S. 738 (1967). We grant counsel's motion and dismiss this appeal.

Counsel's supporting brief explains the nature of the case and addresses potential issues that an appeal of this kind might be expected to involve. Toran has filed a response opposing counsel's motion. *See* CIR. R. 51(b). Because counsel's analysis appears to be thorough, we limit our review to the subjects she discusses, along with the contentions in Toran's response. *See United States v. Bey*, 748 F.3d 774, 776 (7th Cir. 2014); *United States v. Wagner*, 103 F.3d 551, 553 (7th Cir. 1996).

Toran's indictment included a forfeiture count covering multiple bank accounts and real estate parcels. Early in the proceedings, Toran wanted to raise cash for his defense by selling two properties listed in that count. The government agreed to release its lis pendens as to those properties on condition that the sales proceeds be deposited into an escrow account that Toran could not access without court approval. After the transactions closed, Toran asked the district court to release $175,000 to pay his retained counsel and purchase software to assist counsel in reviewing voluminous billing records turned over by the government in discovery. The court authorized the release of nearly $50,000 but not the full amount requested.

Appellate counsel now ponders whether Toran could argue that the district court abused its discretion by limiting the release to $50,000 (presumably on the theory that this amount was too small to assure his right to counsel). We agree with appellate counsel that this claim would be frivolous. The grand jury found probable cause to believe that Toran had committed the charged crimes, and that finding authorized the pretrial restraint of his assets, even if those assets would have been used to pay for his defense. *See* 21 U.S.C. § 853; *Kaley v. United* States, 134 S. Ct. 1090, 1095 (2014); *United States v. Monsanto*, 491 U.S. 600, 607 (1989). After taking evidence the district court found probable cause to believe that all but $50,000 of the escrowed funds was traceable to criminal conduct. A defendant has no right to spend stolen money for a lawyer or anything else. *Kaley*, 134 S. Ct. at 1096.

Counsel also considers but rejects as frivolous a claim that the district court erred in refusing to grant a new trial on the ground that the government had "failed to establish the elements of each charge." This is all Toran said about the evidence in his motion for new trial, *see* FED. R. CRIM. P. 33, and actually the quoted sentence just renews the motion for judgment of acquittal he made at the close of the evidence. *See* FED. R. CRIM. P. 29. No matter the label, however, the judge's ruling is unassailable because the government presented overwhelming evidence of Toran's guilt. "[T]he relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the

crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *see United States v. Dingle*, 862 F.3d 607, 614 (7th Cir. 2017). Toran was co-owner of the company and in charge of billing. The sheer amount of fictitious charges—$4.7 million out of $7.3 million billed during the company's operations—eliminates any plausible doubt about Toran's knowledge and leadership of the fraud. And if that reasonable inference were not enough, multiple former employees testified that they billed for transporting Medicaid-approved clients, regardless whether they were transported or, for that matter, still alive. Toran's company frequently billed for more riders than its vans could physically transport. A rational trier of fact certainly could have found Toran guilty beyond a reasonable doubt.

Counsel last considers and correctly declines to pursue a challenge to the district court's admission of the government's summary charts into evidence. *See* FED. R. EVID. 1006. Toran explicitly conceded that his company's billing records are voluminous, and the very point of Rule 1006 is to facilitate the fact finder's consideration of such evidence. *United States v. Stoecker*, 215 F.3d 788, 792 (7th Cir. 2000). Toran's trial counsel acknowledged that the summarized records had been available to the defense for almost two years before trial, and counsel also admitted that the charts are accurate. Thus it would be frivolous to claim that the judge abused her discretion in admitting the summary charts. *See United States v. Chhibber*, 741 F.3d 852, 854–58 (7th Cir. 2014); *United States v. Isaacs*, 593 F.3d 517, 527–28 (7th Cir. 2010).

In his Rule 51(b) response, Toran proposes to argue that several times during closing argument the prosecutor engaged in misconduct by misstating the evidence. *See United States v. Haldar*, 751 F.3d 450, 459 (7th Cir. 2014) (explaining that prosecutors, like all lawyers, must avoid misstating the evidence). None of the three instances Toran cites, however, would support a nonfrivolous appellate claim. First, he insists that former employee Lynn Reasonover testified that the supplier of the company's billing software trained her to use it, whereas the prosecutor suggested that Toran had trained her. In fact, what Reasonover said is that she went to the software supplier with Toran and others for training; she did not say who trained her, and the prosecutor's assertion that it was Toran was a reasonable inference. Second, Toran asserts that the prosecutor falsely stated that he had run, or actively participated in running, the business while incarcerated for a different crime. Yet several witnesses testified that they visited or telephoned Toran to discuss business matters during his imprisonment, and emails he sent from prison discuss business matters. Third, Toran argues that the prosecutor mischaracterized the content of two of his emails. He sent one of those emails immediately after learning that authorities were investigating the company. He wrote

his business partner, Tina Kimbrough, saying that, "if they are going to get our money, we will be better off paying our bills." Afterward he paid himself a significant sum from company funds and used that money to pay several personal bills. Toran sent the other email from prison; he told a billing employee how to charge 26 times over a period of months for transporting a client who never once was actually transported. The prosecutor accurately described these emails.

Toran also contends in his Rule 51(b) response that his convictions must be reversed because, he says, the government elicited perjured testimony from Kimbrough. The government may not knowingly use false evidence to obtain a conviction, *Napue v. Illinois*, 360 U.S. 264, 269 (1959), but that did not happen here. On direct examination Kimbrough testified that she had conspired with Toran to overbill, but then on cross-examination she said that the two of them did not have a "plan" to commit fraud. The prosecutor then asked Kimbrough on redirect, in light of the apparent inconsistency, if she wanted to withdraw her guilty plea. Kimbrough declined, explaining that defense counsel's cross-examination had confused her. In fact, she clarified, there had been a conspiracy because she and Toran knew they were overbilling, discussed the matter, and then did nothing about it. They intentionally failed to tell other billers about the issue or even tell them to exercise greater care in billing. Kimbrough assured the judge that she had not been threatened, coerced, or promised anything in exchange for testifying as a government witness. Her waffling on cross-examination does not establish that the government elicited false testimony on direct or redirect, and it was up to the factfinder to decide what weight to give to her testimony. *See United States v. Rebolledo-Delgadillo*, 820 F.3d 870, 877 (7th Cir. 2016) (noting that witness's testimony suggested confusion, not deliberate falsehoods, and explaining that defendant had adequate opportunity on cross-examination to expose any falsehood). This appellate claim, like Toran's proposed argument concerning the prosecutor's closing argument, would be frivolous.

Counsel's motion to withdraw is GRANTED, and the appeal is DISMISSED.